IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| RAYMON ALVEAR, JR., ROBERT MASSEY, and DAVID STOUGH, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>THE SALVATION ARMY, a Georgia Corporation,<br><br>        Defendant. | Case No. 1:22-cv-979-LMM<br><br>**COLLECTIVE ACTION COMPLAINT FOR DAMAGES**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Raymon Alvear, Jr., Robert Massey, and David Stough ("Plaintiffs"), by and through the undersigned attorneys, bring this action, on behalf of themselves and the collective as defined below, against Defendant The Salvation Army ("Defendant") for failure to pay minimum wage as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* Plaintiffs Stough and Massey additionally each bring this action on behalf of themselves and against Defendant for failure to pay overtime as required by the FLSA. Plaintiffs allege as follows:

1

## INTRODUCTION

1.      There are approximately 120 Salvation Army residential adult rehabilitation centers and adult rehabilitation programs ("ARCs") across the United States, approximately 26 of which are located in the Salvation Army Southern Territory and operated by Defendant.  Thousands of vulnerable individuals ("ARC workers")—people who are unhoused or marginally housed, who are very poor, who have drug or alcohol addiction problems, who are entangled in the criminal justice system, and/or who suffer from mental illness—enroll in Defendant's ARCs annually.  Some enroll voluntarily, while others do so as an alternative to incarceration.

2.      The cornerstone of all of Defendant's ARCs is that all ARC workers must perform at least forty hours per week, and often more, of difficult work for Defendant.  Most of the work is performed in direct support of Defendant's thrift stores, retail establishments that are in direct competition with other such enterprises selling used goods.  Typical tasks performed by the ARC workers include sorting donated clothing, hanging clothing on hangers, putting price tags on the clothing and other goods, sorting and cleaning bric-a-brac, testing electronics, rehabilitating furniture, and loading and unloading trucks with donated goods.  All the work performed is suffered or permitted by Defendant and is under the direction and control of employees of Defendant.

3.      In exchange for the ARC workers' full-time labor, Defendant pays wages to the ARC workers that start as low as approximately $7 per week and may increase each week up to a maximum of no more than approximately $25 per week, well below the minimum wage required by the FLSA.  As further compensation for the ARC workers' labor, Defendant provides ARC workers with dorm-like sleeping arrangements, board in the form of food that is at least in part donated by third parties or purchased with ARC workers' SNAP benefits, clothing that has been donated and would otherwise be sold in Defendant's thrift stores, and rudimentary rehabilitative services, the value of which is far below the required minimum wage.  ARC workers who complete the program often leave the ARC penniless and jobless, unable to survive economically in their communities.

4.      People applying to the ARCs who are unable to perform work for Defendant are ineligible to enroll in the ARCs.  Defendant typically expels from the program any ARC workers who, after being admitted to the program, become unable or unwilling to work, including if they become unable to work as a result of an injury sustained performing work for Defendant or because they fall ill.

5.      If ARC workers did not provide labor for Defendant, Defendant would have to pay other workers from the community to complete the tasks it

assigns to ARC workers.  Defendant employs other individuals to work side-by-side with ARC workers performing substantially the same duties for wages in compliance with the FLSA requirements.

6.      Because ARC workers are suffered or permitted to perform tasks for Defendant's benefit, under the direction and control of Defendant's employees, and with the expectation of receiving compensation from Defendant for their labor, Plaintiffs and all others similarly situated are Defendant's employees under the FLSA.  Nevertheless, Defendant has and at all relevant times has had a uniform policy or practice of failing to treat its ARC workers as employees.  It is well established under the FLSA that absent a specific exemption workers cannot waive their right to be compensated at the rates set forth by law.  As a result, Defendant has and at all relevant times has had a policy or practice, in violation of the FLSA, of failing to pay Plaintiffs and all those similarly situated workers federal minimum wage for all hours worked.  Defendant also failed to pay Plaintiffs Massey and Stough overtime compensation for all hours worked in excess of forty hours per week in violation of the FLSA.  These systemic violations have been and are occurring despite Defendant recently publicly acknowledging the importance of the minimum wage and overtime protections of the FLSA, particularly for the working poor, and stating its intention to comply with the minimum wage and overtime provisions of the FLSA for its lay

employees.

7.      Defendant at all relevant times knew that Plaintiffs and all those similarly situated workers were suffered and permitted to work for Defendant but were not paid wages at the required rate for their work, and willfully and intentionally engaged in a widespread policy or practice of failing and refusing to fully compensate Plaintiffs and all those similarly situated workers.  *See* 29 U.S.C. § 255.

8.      Plaintiffs bring this action for violations of the FLSA as a collective action, pursuant to 29 U.S.C. § 216(b), on behalf of the following proposed collective (the "FLSA Collective"):

> All persons who, between March 9, 2019 and the date of final judgment, are, were, or will be enrolled in any Salvation Army Adult Rehabilitation Center or Program operated by Defendant who perform, performed, or will perform work for Defendant and are, were, or will be paid less than the applicable federal minimum wage.

9.      Plaintiffs Stough and Massey each bring this action on behalf of themselves individually for failure to pay overtime as required by the FLSA.

10.     Defendant is liable for its violations of federal law.

11.     Accordingly, as set forth below, Plaintiffs seek unpaid compensation, penalties, liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs pursuant to the FLSA on behalf of themselves and others similarly situated.

**JURISDICTION**

12.     This Court has jurisdiction over the FLSA claims pursuant to 28

U.S.C. § 1331 and 29 U.S.C. § 216(b).

13.     This Court has general jurisdiction over Defendant because

Defendant is incorporated and has its principal place of business in Georgia.

**VENUE**

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because

Defendant resides in this District and a substantial part of the events or

omissions giving rise to Plaintiffs' claims occurred in this District.  Accordingly,

Defendant conducted and continues to conduct substantial business in this

District, a substantial part of the transactions at issue took place in this District,

and Defendant's liability arose, in part, in this District.

**PARTIES**

**A.     Plaintiffs**

15.      Plaintiff Raymon Alvear, Jr. is an adult resident of Texas.  Plaintiff

Alvear entered the Salvation Army ARC in Fort Worth, Texas in December 2018

and left the program in July 2019.  He then entered the Salvation Army ARC in

Dallas, Texas in June 2020 and left the program in in August 2020. During the

entire period that he was a participant in the ARCs, Plaintiff Alvear was required

to work for Defendant, performing tasks that included working in the kitchen to

prepare meals for all the ARC residents; sorting donated clothing in the
warehouse and placing them on hangers; cleaning and making minor repairs to
donated upholstered furniture; and working in a Salvation Army store where he
processed donations, unloaded donations from vehicles, and helped consumers
to load purchases in vehicles.  He worked at least 8 hours a day, 5 days a week,
in each job he performed.  Plaintiff Alvear was never paid the FLSA required
minimum wage. Instead, his weekly wages started at $7 per week and
incrementally increased until he received wages of $25 per week, at which point
wage increases stopped.  Plaintiff Alvear was suffered and permitted to work by
Defendant, and his work was under the direction and control of Defendant.
Plaintiff Alvear qualified as an employee of Defendant under the FLSA, 29 U.S.C.
§ 203(e)(1).

16.    Plaintiff Robert Massey is an adult resident of Georgia.  Plaintiff
Massey most recently entered the Salvation Army ARC in Memphis, Tennessee
on or about January 2020; he left the program in March 2020.  During the entire
period that he was a participant in the ARC, Plaintiff Massey was required to
work for Defendant, performing tasks including loading and unloading trucks
with donated furniture and other goods, alongside drivers who Plaintiff Massey
understood to be Salvation Army's acknowledged employees.  He worked at
least 8 hours a day, 5 days a week in his job and worked additional hours on the

weekend from time to time in addition to 40 hours during week.  Plaintiff

Massey was never paid either the FLSA required minimum wage or overtime

wages.  Instead, his weekly wages started at $7 per week and incrementally

increased until he received wages of $20 per week, at which point wage increases

stopped.  Plaintiff Massey was suffered and permitted to work by Defendant,

and his work was under the direction and control of Defendant.  Plaintiff Massey

qualified as an employee of Defendant under the FLSA, 29 U.S.C. § 203(e)(1).

17.     Plaintiff David Joseph Stough is an adult resident of

Alabama.  Plaintiff Stough entered the Salvation Army ARC in Birmingham,

Alabama in August 2021 and left the program in November 2021.  During the

entire period that he was a participant in the ARC, Plaintiff Stough was required

to work for Defendant, performing tasks that include loading and unloading

donations on trucks to be transferred to the Salvation Army warehouse.  His

regular work schedule was 7:00 a.m. to 4:00 p.m., Monday through Friday, but he

routinely worked as late as 6:00 p.m. and worked a full day every other

Saturday.  Plaintiff Stough was never paid either the FLSA required minimum

wage or overtime wages.  Instead, his weekly wages started at $7 per week and

incrementally increased until he received wages of about $20 per week.  Plaintiff

Stough was suffered and permitted to work by Defendant, and his work was

under the direction and control of Defendant.  Plaintiff Stough qualified as an

employee of Defendant under the FLSA, 29 U.S.C. § 203(e)(1).

**B.      Defendant**

18.      Defendant is a 501(c)(3) organization incorporated in Georgia, with its headquarters located at 1424 Northeast Expressway NE, Atlanta, Georgia 30329.

19.      The Salvation Army National Corporation conducts its operations in the United States through four administrative territories: Eastern, Southern, Central, and Western.  Each territory is separately incorporated, has its own territorial commander serving as leader of the territory, and oversees programs and activities within its own designated geographic areas.  Defendant is responsible for the Southern Territory, which consists of Alabama, Arkansas, Florida, Georgia, Kentucky, Louisiana, Maryland, Mississippi, North Carolina, Oklahoma, South Carolina, Tennessee, Texas, Virginia, Washington, D.C., and West Virginia.

20.      Defendant is, and at all relevant times has been, an employer within the meaning of 29 U.S.C. §§ 203(d) and 203(g).

21.      Defendant is, and at all relevant times has been, an enterprise within the meaning of 29 U.S.C. § 203(r)(1).

22.      At all relevant times, Plaintiffs were Defendant's employees engaged in commerce or in the production of goods for commerce within the

meaning of 29 U.S.C. §§ 203(s)(1), 206, and 207.

## FACTUAL ALLEGATIONS

23.    Thousands of individuals enroll in Defendant's ARC programs annually.  Some enroll voluntarily, often because they are poor, unhoused, sick, suffering from a substance use disorder, or simply have nowhere else to go. Others enroll after courts, probation or parole officers, or other criminal legal authorities require them to choose between enrollment or incarceration.

24.    Defendant requires that, to enroll in and remain at an ARC, and in exchange for room, board, clothing, rehabilitative services, and nominal wages— the value of which is far below the required minimum wage—all ARC workers must perform assigned tasks for Defendant for at least forty hours per week, and frequently more.  The Salvation Army touts this requirement on its website, explaining that a person cannot enroll in an ARC program if he or she is not "[a]ble to perform a work therapy assignment for eight hours a day."

25.    Defendant generally requires every ARC worker to complete an intake with the Defendant before enrolling in the program.  Among other things, applicants may be asked to describe their work histories and any health or physical problems which might keep them from working.  Applicants must be able to work at least five days or forty hours per week.

26.    Once enrolled in the program, ARC workers, including Plaintiffs,

perform tasks that are often physically grueling and sometimes dangerous.  Such tasks include loading, unloading, and hauling heavy furniture, home appliances, and other donations from trucks; sorting through mountains of donated clothing and other goods; cleaning, testing, and repairing donated goods; operating heavy machinery such as balers in large warehouses; driving or traveling on trucks to pick up and drop off donated goods; and cleaning, organizing, and maintaining Defendant's thrift stores.

27.     The jobs performed by ARC workers are not in furtherance of any educational program and do not primarily further ARC workers' rehabilitation. Defendant does not provide ARC workers with job or skills training, nor any other training that would further ARC workers' employment once they leave the program.  Some ARC workers enter the ARCs with skilled training and experience and long histories of gainful employment.  Defendant does not provide any meaningful job placement assistance for ARC workers leaving the ARC.

28.     The jobs performed by ARC workers, including the jobs performed by Plaintiffs, directly and substantially benefit and are essential to the operation of Defendant's multi-million dollar commercial thrift store operations.  The ARC workers, including Plaintiffs, perform tasks assigned to them by Defendant and are under Defendant's direction and control while performing work. Defendant's

thrift stores, retail establishments that compete for business with other commercial enterprises selling used goods, could not operate without the labor of ARC workers.

29.     As of 2020, there were more than 1000 Salvation Army branded thrift stores across the country.  Defendant's thrift stores generate millions of dollars in annual revenue for Defendant.  In 2019, The Salvation Army National Corporation reportedly generated $598,449,000 in revenue from sales at these thrift stores.

30.     Defendant also benefits from the jobs it requires some ARC workers to perform inside the ARCs themselves, like cleaning the common areas, kitchen work and menial administrative and clerical tasks.

31.     If Defendant did not receive the benefit of ARC workers' labor, Defendant would have to pay workers in compliance with the FLSA minimum wage laws to perform this work.  Some of Defendant's advertisements for paid positions at its ARCs describe job responsibilities, like sorting donations, tagging merchandise, and cleaning furniture donations, that are substantially the same as jobs performed by ARC workers.  Indeed, Defendant employs other individuals from the community to work side-by-side with ARC workers performing substantially the same duties.  Unlike ARC workers, Defendant pays these other employees market-rate wages that meet or exceed federal minimum wage

requirements.

32.     Defendant controls all aspects of ARC workers' job assignments, including, but not limited to, the task each ARC worker must perform; the days of the week on which ARC workers must perform assigned tasks; the start and end time for shifts; the work location; the job duties for each position; the manner in which ARC workers are required to perform job duties; standards of performance; the rate of pay (or lack thereof) for each position; the training, if any, provided to ARC workers regarding the work they are required to perform; and all other working conditions.  Jobs are assigned and overseen by supervisors who are Defendant's fully paid employees.

33.     An ARC worker's refusal or inability to work is grounds for Defendant to expel the worker from the ARC, even if the worker follows all other program rules.  Defendant routinely expels workers from its ARCs if they become unable to perform assigned tasks because of illness or even injury suffered while performing tasks for Defendant.

34.     ARC workers who miss scheduled shifts, even for legitimate reasons like illness or injury, typically are required to make up those hours at a later date.

35.     The policies or practices for the ARCs provide that if ARC workers perform their assigned jobs for Defendant and abide by other program rules, they will be provided with food, clothing, shelter, rehabilitative services, and

wages—sometimes in the form of "canteen cards" redeemable only at

Defendant's canteen and a meager amount of money, paid on an escalating scale.

Defendant typically pays ARC workers approximately $7 per week for their

work when they begin, with their wages to increase by $1 each week, before

topping out at a maximum of no more than approximately $25 per week as they

participate in Defendant's work program.  The policies and practices for the

ARCs also provide that if ARC workers are unable or unwilling to perform

assigned tasks, they will not receive these benefits as they will become ineligible

to remain in the program.

36.    Defendant required Plaintiffs Stough and Massey to work more than

forty hours per week.  Yet Defendant did not pay them overtime wages.

37.    Notwithstanding the significant benefits Defendant derives from

jobs performed by ARC workers, and the ARC workers' expectation that they

will be compensated for their labor, Defendant maintains, and for many years

has maintained, a uniform policy of unlawfully failing to treat ARC workers as

employees or pay them minimum wages.

38.    The policies or practices described herein are consistent across every

ARC operated by Defendant.  Every ARC worker must perform their assigned

tasks for at least forty hours per week as a condition of remaining in the

program.  Defendant does not pay any ARC worker minimum wage for all hours

worked.

39.     Defendant permits ARC workers to select for their personal use a limited number of clothing items from those donated to the Salvation Army. ARC workers must live on-site, typically in assigned sleeping areas and dormitory settings with shared showers, toilets, and sinks.  While enrolled in an ARC program, ARC workers are reliant on Defendant for food and shelter.

40.     Although workers typically are not charged a fee to participate in the ARC programs, Defendant requires them to relinquish to Defendant SNAP benefits they are already receiving or to sign up for SNAP benefits if they are eligible and have not already enrolled and then turn over the benefits to Defendant.

41.     ARC workers generally stop performing jobs for Defendant in ARC programs when they complete Defendant's program (i.e., "graduate") (typically after 180 days), leave voluntarily, or are expelled.  The ARCs provide no meaningful job placement services for those leaving the program.  Upon information and belief, only a small percentage of workers successfully complete Defendant's ARC programs.  Many leave or are expelled from the program prior to completion.  Some are required to stay longer than 180 days as discipline for supposed infractions of ARC rules.

42.     At all relevant times, Defendant was aware that ARC workers were

paid no more than a few dollars per week despite working at least forty hours.

43.     Defendant willfully denied Plaintiffs and all those similarly situated minimum wages for all time worked.

44.     By failing to treat Plaintiffs and all those similarly situated as employees and failing to pay minimum wage, Defendant has sought to avoid various duties and obligations owed to employees under the FLSA.  Through this action, Plaintiffs challenge Defendant's unlawful policy of failing to satisfy its duty to pay proper wages to ARC workers.

## COLLECTIVE ACTION ALLEGATIONS

45.     Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) on behalf of themselves and the proposed FLSA Collective, defined as:

> All persons who, between March 9, 2019 and the date of final judgment, are, were, or will be enrolled in any Salvation Army Adult Rehabilitation Center or Program operated by Defendant, who perform, performed, or will perform work for Defendant, and are, were, or will be paid less than the applicable federal minimum wage.

46.     Plaintiffs and all members of the proposed FLSA Collective are similarly situated.  They were subject to substantially similar job requirements, pay provisions, and a common policy or practice that required or permitted them to perform work for the benefit and at the direction of Defendant without receiving proper wages.

47.     Plaintiffs estimate that there are thousands of similarly situated current and former workers in Defendant's ARC programs whose rights to federal minimum wages are, were, and will be violated by Defendant.

48.     Defendant knew that Plaintiffs and the proposed FLSA Collective performed work that required them to be compensated at the federal minimum wage. Defendant willfully and intentionally failed to properly compensate these individuals as required by the FLSA.

49.     Defendant is liable under the FLSA for failing to properly compensate Plaintiffs and the proposed FLSA Collective, and as such, notice should be sent to the FLSA Collective. There are numerous similarly situated current and former workers in Defendant's ARCs who have been denied proper minimum wage in violation of the FLSA who would benefit from the issuance of Court-supervised notice of this lawsuit and the opportunity to join.

50.     Those similarly-situated employees are known to Defendant and are readily identifiable through its records.

51.     Plaintiffs and members of the proposed FLSA Collective should therefore be permitted to pursue their claims collectively, pursuant to 29 U.S.C. § 216(b).

52.     A collective action will provide the most efficient mechanism for adjudicating the claims of Plaintiffs and the members of the proposed FLSA

Collective.

53.     Plaintiffs request that they be permitted to serve as representatives

for those who consent to participate in this action and that the action be granted

collective action status pursuant to 29 U.S.C. § 216(b).

**COUNT ONE**
**Unlawful Failure to Pay Minimum Wage**
**Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.***
*Plaintiffs on behalf of the FLSA Collective*

54.     The allegations of paragraphs 1 through 53 are re-alleged and

incorporated herein by reference.

55.     Plaintiffs and the FLSA Collective assert this count pursuant to 29

U.S.C. § 216(b).  Plaintiffs consent to join this action.  Copies of Plaintiffs'

consents to sue are attached hereto as Exhibit A.  As this action proceeds, it is

likely that other individuals will sign consent forms and join as plaintiffs.

56.     At all relevant times, Defendant was an employer engaged in

commerce and/or in the production of goods for commerce within the meaning

of the FLSA.  *See* 29 U.S.C. §§ 203(b), 203(s)(1).

57.     At all relevant times, Defendant employed Plaintiffs and the

proposed FLSA Collective, and Plaintiffs and the proposed FLSA Collective were

Defendant's employees, within the meaning of the FLSA.  *See* 29 U.S.C. §§ 203(e),

203(g).

58.     At all relevant times, Defendant has had a gross operating revenue in excess of $500,000.

59.     The FLSA requires covered employers like Defendant to pay employees like Plaintiffs and the proposed FLSA Collective federal minimum wage for hours worked.  *See* 29 U.S.C. § 206(a).

60.     Plaintiffs and the proposed FLSA Collective's employment do not fall under any of the exemptions to the minimum wage requirements of the FLSA.  *See* 29 U.S.C. § 213.

61.     At all relevant times, Defendant failed to pay Plaintiffs and the proposed FLSA Collective at least federal minimum wage for their work.

62.     At all relevant times, Defendant knew that Plaintiffs and the proposed FLSA Collective were not paid federal minimum wage for their work, and willfully and intentionally engaged in a widespread policy or practice of failing and refusing to pay Plaintiffs and the proposed FLSA Collective federal minimum wage.  *See* 29 U.S.C. § 255.  Defendant is a large and sophisticated entity familiar with the requirements of the FLSA.  Defendant's violations were willful because it knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA.

63.     Defendant's willful failure and refusal to pay Plaintiffs and the proposed FLSA Collective federal minimum wage for hours worked violates the

FLSA.  *See* 29 U.S.C. § 206.

64.     As a direct and proximate result of these unlawful practices,

Plaintiffs and the proposed FLSA Collective suffered and continue to suffer wage

loss and are therefore entitled to recover unpaid minimum wages for up to three

years prior to the filing of their claims, liquidated damages, pre- and post-

judgment interest, attorneys' fees and costs, and such other legal and equitable

relief as the Court deems just and proper.

**COUNT TWO**
**Unlawful Failure to Pay Overtime**
**Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.***
*Plaintiffs Stough and Massey*

65.     The allegations in paragraphs 1 through 64 are re-alleged and

incorporated herein by reference.

66.     Plaintiffs Stough and Massey assert this count pursuant to 29 U.S.C.

§ 216(b).  Plaintiffs consent to join this action.  Copies of Plaintiffs' consents to

sue are attached hereto as Exhibit A.

67.     At all relevant times, Defendant was an employer engaged in

commerce and/or in the production of goods for commerce within the meaning

of the FLSA.  *See* 29 U.S.C. §§ 203(b), 203(s)(1).

68.     At all relevant times, Defendant employed Plaintiffs Stough and

Massey, and Plaintiffs Stough and Massey were Defendant's employees within

the meaning of the FLSA.  *See* 29 U.S.C. §§ 203(e), 203(g).

69.     At all relevant times, Defendant has had a gross operating revenue in excess of $500,000.

70.     The FLSA requires covered employers like Defendant to pay employees like Plaintiffs Stough and Massey no less than one-and-a-half times their regular rate of pay for all hours worked in excess of forty in a workweek. *See* 29 U.S.C. § 207.

71.     Plaintiff Stough's and Plaintiff Massey's employment do not fall under any of the exemptions to the overtime requirements of the FLSA.  *See* 29 U.S.C. § 213.

72.     As described above, Plaintiffs Stough and Massey worked more than forty hours per week for Defendant.

73.     At all relevant times, Defendant did not properly compensate Plaintiff Stough or Massey for all hours worked in excess of forty in a workweek, as required by the FLSA.

74.     At all relevant times, Defendant knew that Plaintiffs Stough and Massey worked overtime without proper compensation, and willfully and intentionally failed and refused to pay Plaintiffs Stough and Massey wages at the required overtime rates.  *See* 29 U.S.C. § 255.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, and all those similarly situated, collectively request that this Honorable Court:

1.      Issue an order certifying this action as a collective action under the FLSA and designating Plaintiffs as representatives of all those similarly situated, 29 U.S.C. § 216(b).

2.      Authorize that notice of this collective action be issued by the Court or Plaintiffs to all persons who have participated in Defendant's ARCs at any time during the three years immediately preceding the filing of this suit, up through and including the date this notice is issued.  Such notice shall inform these persons of the filing of this civil action, the nature of the action, and their right to join this lawsuit if they believe they were denied proper wages pursuant to 29 U.S.C. § 216(b).

3.      Grant leave to add additional plaintiffs or claims by motion, the filing of consent forms, or any other method approved by the Court.

4.      Enter a declaratory judgment that Defendant's violations were unlawful under the FLSA and were willful.

5.      Award Plaintiffs and all those similarly situated actual damages for unpaid wages and liquidated damages equal to the unpaid wages found due to Plaintiffs and the proposed FLSA Collective as provided by the FLSA, 29 U.S.C. §

216(b).

6.      Award Plaintiffs and all those similarly situated pre- and post-judgment interest at the relevant statutory rate as provided by the FLSA, 29 U.S.C. § 216(b).

7.      Award Plaintiffs and all those similarly situated attorneys' fees, costs (including expert fees), and disbursements as provided by the FLSA, 29 U.S.C. § 216(b).

8.      Award Plaintiffs and all others similarly situated further legal and equitable relief as this Court deems necessary, just, and proper.

### JURY DEMAND

Plaintiffs, on behalf of themselves and all others similarly situated, hereby demand a trial by jury on all issues so triable.


[SIGNATURES ON FOLLOWING PAGE]

DATED:  March 9, 2022                     Respectfully submitted,

                                          COHEN MILSTEIN SELLERS & TOLL PLLC

                                          By:  */s/ Kalpana Kotagal*
                                                Joseph M. Sellers
                                                Kalpana Kotagal
                                                1100 New York Ave., N.W.
                                                Suite 500
                                                Washington, D.C.  20005
                                                Tel.:  (202) 408-4600
                                                Fax.:  (202) 408-4699
                                                jsellers@cohenmilstein.com
                                                kkotagal@cohenmilstein.com

                                                Michael Hancock
                                                Cohen Milstein Sellers & Toll PLLC
                                                88 Pine Street, 14th Floor
                                                New York, NY  10005
                                                Tel.:  (212) 838-7797
                                                Fax.:  (212) 838-7745
                                                mhancock@cohenmilstein.com

DATED:  March 9, 2022                     ROSEN BIEN GALVAN & GRUNFELD LLP

                                          By:  */s/ Michael Freedman*

Gay Grunfeld
Michael Freedman
Priyah Kaul
101 Mission Street, 6th Floor
San Francisco, CA  94105
Tel.:  (415) 433-6830
Fax.:  (415) 433-7104
ggrunfeld@rbgg.com
mfreedman@rbgg.com
pkaul@rbgg.com

DATED:  March 9, 2022          RUKIN HYLAND & RIGGIN LLP

By:  */s/ Jessica Riggin*
Jessica Riggin
Valerie Brender
1939 Harrison St., Suite 290
Oakland, CA  94612
Tel.:  (415) 421-1800
Fax.:  (415) 421-1700
jriggin@rukinhyland.com
vbrender@rukinhyland.com

DATED:  March 9, 2022          RADFORD & KEEBAUGH, LLC

By:

*/s/ James Radford*
James Radford
Georgia Bar No. 108007
Daniel Werner
Georgia Bar No. 422070

Radford & Keebaugh, LLC
315 W. Ponce de Leon Avenue
Suite 1080
Decatur, Georgia 30030
Tel: (678) 271-0302
james@decaturlegal.com

*Attorneys for Plaintiffs*

# Exhibit A

**<u>CONSENT TO JOIN COLLECTIVE ACTION AGAINST SALVATION ARMY</u>**
**Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b)**

Name:  Raymon Alvear

1. I am over the age of eighteen and competent to give my consent in this matter.

2. I consent and agree to pursue my Fair Labor Standards Act claims pursuant to 29 U.S.C. section 201, *et seq.* against The Salvation Army and any other related entities or affiliates.

3. I affirm that I attended a Salvation Army ARC program and performed work for the Salvation Army as part of that program within three years of the date I am submitting this Consent to Join form.

4. I understand that the location of the Salvation Army ARC(s) I attended in the three years prior to submitting this Consent to Join form will dictate whether I am eligible to join the lawsuit(s) and which lawsuit(s) I am eligible to join.  I attest to the following statement(s) (select 1 or more):

   _ x_ I attended an ARC program in Alabama, Arkansas, Florida, Georgia, Kentucky (outside of northeast), Louisiana, Maryland, Mississippi, North Carolina, Oklahoma, South Carolina, Tennessee, Texas, Virginia, Washington, DC, and West Virginia ("Southern ARCs") within the three years prior to submitting this Consent to Join form.  My approximate dates of attendance were  December      2018        (month, year) to  July          2019        (month, year).

   - If you attended a Southern ARC within the applicable three-year statute of limitations, your Consent to Join form will be filed in *Alvear, et al.* vs. *The Salvation Army, a Georgia nonprofit corporation.*

   ___ I attended an ARC program in Connecticut, Delaware, northeast Kentucky, Maine, Massachusetts, New Hampshire, New Jersey, New York, Ohio, Pennsylvania, Rhode Island, and Vermont ("Eastern ARCs") within the three years prior to submitting this Consent to Join form.  My approximate dates of attendance were _____ (month, year) to _____ month, year).

   - If you attended an Eastern ARC within the applicable three-year statute of limitations, your Consent to Join form will be filed in *Geiser, et al.* vs*. The Salvation Army, a New York nonprofit corporation.*

   ___ I attended an ARC program in Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Missouri, Nebraska, North Dakota, South Dakota, and Wisconsin ("Central ARCs") within the three years prior to submitting this Consent to Join form.  My approximate dates of attendance were _____ (month, year) to _____ (month, year).

- If you attended a Central ARC within the applicable three-year statute of limitations, your Consent to Join form will be filed in *Clancy et al.* vs. *The Salvation Army, an Illinois nonprofit corporation.*

____ I attended the ARC in a state that is **not** listed above within the three years prior to submitting this Consent to Join form. I attended an ARC program located in Tx__ (state), and my approximate dates of attendance were _____ (month, year) to _____ (month, year).

**\*\*PLEASE NOTE THAT IF YOU <u>ONLY</u> ATTENDED AN ARC IN A STATE THAT IS NOT LISTED ABOVE YOU ARE NOT ELIGIBLE TO JOIN A LAWSUIT PURSUED BY PLAINTIFFS' COUNSEL AT THIS TIME.\*\***

5. While at the Salvation Army ARC(s) listed above, I performed work for Defendant, The Salvation Army, and there were occasions when I was not paid federal minimum wage for all hours worked. If I worked over 40 hours per week, I did not receive proper compensation, including overtime pay.

6. I choose to be represented by Cohen Milstein Sellers & Toll PLLC, Rosen Bien Galvan & Grunfeld LLP, Rukin Hyland & Riggin LLP , and any other attorneys those firms decide to associate with for all purposes in this action and authorize them to take any steps necessary to pursue my claims, including filing new lawsuits.

7. I understand that I may withdraw this consent at any time by notifying the above-listed attorneys in writing.

Date: __3/8/2022 | 12:45 PM PST__

DocuSigned by:

2C038981A75F4D3...
_____
Signature

Raymon Alvear
_____
Print Name

██████████
_____
Telephone Number*

██████████████ _____
E-mail*

███████████
_____
Mailing Address 1*

███████████
_____
Mailing Address 2*

*Your contact information will be redacted before filing with the Court.*

2

## <u>CONSENT TO JOIN COLLECTIVE ACTION AGAINST SALVATION ARMY</u>
### Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b)

Name: David Stough

1. I am over the age of eighteen and competent to give my consent in this matter.

2. I consent and agree to pursue my Fair Labor Standards Act claims pursuant to 29 U.S.C. section 201, *et seq.* against The Salvation Army and any other related entities or affiliates.

3. I affirm that I attended a Salvation Army ARC program and performed work for the Salvation Army as part of that program within three years of the date I am submitting this Consent to Join form.

4. I understand that the location of the Salvation Army ARC(s) I attended in the three years prior to submitting this Consent to Join form will dictate whether I am eligible to join the lawsuit(s) and which lawsuit(s) I am eligible to join. I attest to the following statement(s) (select 1 or more):

   __X__ I attended an ARC program in Alabama, Arkansas, Florida, Georgia, Kentucky (outside of northeast), Louisiana, Maryland, Mississippi, North Carolina, Oklahoma, South Carolina, Tennessee, Texas, Virginia, Washington, DC, and West Virginia ("Southern ARCs") within the three years prior to submitting this Consent to Join form. My approximate dates of attendance were ___August 2021___ (month, year) to ___November 2021___ (month, year).

   - If you attended a Southern ARC within the applicable three-year statute of limitations, your Consent to Join form will be filed in *Alvear, et al.* vs. *The Salvation Army, a Georgia nonprofit corporation.*

   ___ I attended an ARC program in Connecticut, Delaware, northeast Kentucky, Maine, Massachusetts, New Hampshire, New Jersey, New York, Ohio, Pennsylvania, Rhode Island, and Vermont ("Eastern ARCs") within the three years prior to submitting this Consent to Join form. My approximate dates of attendance were _____ (month, year) to _____ month, year).

   - If you attended an Eastern ARC within the applicable three-year statute of limitations, your Consent to Join form will be filed in *Geiser, et al.* vs. *The Salvation Army, a New York nonprofit corporation.*

   ___ I attended an ARC program in Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Missouri, Nebraska, North Dakota, South Dakota, and Wisconsin ("Central ARCs") within the three years prior to submitting this Consent to Join form. My approximate dates of attendance were _____ (month, year) to _____ (month, year).

DocuSign Envelope ID: 1462CAEB-9805-4BB8-A08A-5491F2B7DC7B

- If you attended a Central ARC within the applicable three-year statute of limitations, your *Consent to Join* form will be filed in *Clancy et al.* vs. *The Salvation Army, an Illinois nonprofit corporation.*

___ I attended the ARC in a state that is **not** listed above within the three years prior to submitting this Consent to Join form. I attended an ARC program located in Al (state), and my approximate dates of attendance were _____ (month, year) to _____ (month, year).

**\*\*PLEASE NOTE THAT IF YOU ONLY ATTENDED AN ARC IN A STATE THAT IS NOT LISTED ABOVE YOU ARE NOT ELIGIBLE TO JOIN A LAWSUIT PURSUED BY PLAINTIFFS' COUNSEL AT THIS TIME.\*\***

5. While at the Salvation Army ARC(s) listed above, I performed work for Defendant, The Salvation Army, and there were occasions when I was not paid federal minimum wage for all hours worked. If I worked over 40 hours per week, I did not receive proper compensation, including overtime pay.

6. I choose to be represented by Cohen Milstein Sellers & Toll PLLC, Rosen Bien Galvan & Grunfeld LLP, Rukin Hyland & Riggin LLP , and any other attorneys those firms decide to associate with for all purposes in this action and authorize them to take any steps necessary to pursue my claims, including filing new lawsuits.

7. I understand that I may withdraw this consent at any time by notifying the above-listed attorneys in writing.

Date: 3/8/2022 | 5:29 PM PST

DocuSigned by:

C9D3152E99FE45C...

Signature

David Stough

Print Name

Telephone Number*

E-mail*

Mailing Address 1*

Mailing Address 2*

*Your contact information will be redacted before filing with the Court.*

2

## <u>CONSENT TO JOIN COLLECTIVE ACTION AGAINST SALVATION ARMY</u>
### Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b)

Name: <u>Robert Massey</u>

1. I am over the age of eighteen and competent to give my consent in this matter.

2. I consent and agree to pursue my Fair Labor Standards Act claims pursuant to 29 U.S.C. section 201, *et seq.* against The Salvation Army and any other related entities or affiliates.

3. I affirm that I attended a Salvation Army ARC program and performed work for the Salvation Army as part of that program within three years of the date I am submitting this Consent to Join form.

4. I understand that the location of the Salvation Army ARC(s) I attended in the three years prior to submitting this Consent to Join form will dictate whether I am eligible to join the lawsuit(s) and which lawsuit(s) I am eligible to join. I attest to the following statement(s) (select 1 or more):

   <u>X</u> I attended an ARC program in Alabama, Arkansas, Florida, Georgia, Kentucky (outside of northeast), Louisiana, Maryland, Mississippi, North Carolina, Oklahoma, South Carolina, Tennessee, Texas, Virginia, Washington, DC, and West Virginia ("Southern ARCs") within the three years prior to submitting this Consent to Join form. My approximate dates of attendance were <u>January        2020</u> (month, year) to <u>March         2020</u> (month, year).

   - If you attended a Southern ARC within the applicable three-year statute of limitations, your Consent to Join form will be filed in *Alvear, et al.* vs. *The Salvation Army, a Georgia nonprofit corporation.*

   ___ I attended an ARC program in Connecticut, Delaware, northeast Kentucky, Maine, Massachusetts, New Hampshire, New Jersey, New York, Ohio, Pennsylvania, Rhode Island, and Vermont ("Eastern ARCs") within the three years prior to submitting this Consent to Join form. My approximate dates of attendance were _____ (month, year) to _____ month, year).

   - If you attended an Eastern ARC within the applicable three-year statute of limitations, your Consent to Join form will be filed in *Geiser, et al.* vs. *The Salvation Army, a New York nonprofit corporation.*

   ___ I attended an ARC program in Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Missouri, Nebraska, North Dakota, South Dakota, and Wisconsin ("Central ARCs") within the three years prior to submitting this Consent to Join form. My approximate dates of attendance were _____ (month, year) to _____ (month, year).

1

DocuSign Envelope ID: E6754ED6-BC1B-4C56-BFE4-97ED7DB89704

- If you attended a Central ARC within the applicable three-year statute of limitations, your Consent to Join form will be filed in *Clancy et al.* vs. *The Salvation Army, an Illinois nonprofit corporation.*

_____ I attended the ARC in a state that is **not** listed above within the three years prior to submitting this Consent to Join form.  I attended an ARC program located in __Tn__(state), and my approximate dates of attendance were _____ (month, year) to _____ (month, year).

**\*\*PLEASE NOTE THAT IF YOU <u>ONLY</u> ATTENDED AN ARC IN A STATE THAT IS NOT LISTED ABOVE YOU ARE NOT ELIGIBLE TO JOIN A LAWSUIT PURSUED BY PLAINTIFFS' COUNSEL AT THIS TIME.\*\***

5. While at the Salvation Army ARC(s) listed above, I performed work for Defendant, The Salvation Army, and there were occasions when I was not paid federal minimum wage for all hours worked.  If I worked over 40 hours per week, I did not receive proper compensation, including overtime pay.

6. I choose to be represented by Cohen Milstein Sellers & Toll PLLC, Rosen Bien Galvan & Grunfeld LLP, Rukin Hyland & Riggin LLP , and any other attorneys those firms decide to associate with for all purposes in this action and authorize them to take any steps necessary to pursue my claims, including filing new lawsuits.

7. I understand that I may withdraw this consent at any time by notifying the above-listed attorneys in writing.

Date: __3/8/2022 | 12:36 PM PST__

DocuSigned by:

7BE39425EFE0488...

_____
Signature

Robert Massey
_____
Print Name

_____
Telephone Number*

_____
E-mail*

_____
Mailing Address 1*

_____
Mailing Address 2*

*Your contact information will be redacted before filing with the Court.*

2