IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

RAYMON ALVEAR, JR., ROBERT
MASSEY, DAVID STOUGH, and
ANDREW KEIGANS, on behalf of
themselves and all others similarly
situated,

    Plaintiffs,

 v.

THE SALVATION ARMY, a Georgia
Corporation,

    Defendant.

Case No. 1:22-cv-00979-SEG

**FIRST AMENDED COMPLAINT –
CLASS AND COLLECTIVE ACTION**

**JURY TRIAL DEMANDED**

   Plaintiffs Raymon Alvear, Jr., Robert Massey, David Stough, and Andrew

Keigans ("Plaintiffs"), by and through the undersigned attorneys, bring this

action, on behalf of themselves and the collective as defined below, against

Defendant The Salvation Army ("Defendant") for failure to pay minimum wage

as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*

Plaintiffs Stough and Massey additionally each bring this action on behalf of

themselves and against Defendant for failure to pay overtime as required by the

FLSA.  Plaintiff Keigans also brings this action on behalf of himself and a class of

similarly situated workers against Defendant for violations of Florida state law.

1

Plaintiffs allege as follows:

## INTRODUCTION

1.      There are approximately 120 Salvation Army residential adult rehabilitation centers and adult rehabilitation programs ("ARCs") across the United States, approximately 26 of which are located in the Salvation Army Southern Territory and operated by Defendant.  Thousands of vulnerable individuals ("ARC workers")—people who are unhoused or marginally housed, who are very poor, who have drug or alcohol addiction problems, who are entangled in the criminal justice system, and/or who suffer from mental illness—enroll in Defendant's ARCs annually.

2.      The cornerstone of all of Defendant's ARCs is that all ARC workers must perform at least forty hours per week, and often more, of difficult work for Defendant.  Most of the work is performed in direct support of Defendant's thrift stores, retail establishments that are in direct competition with other such enterprises selling used goods.  Typical tasks performed by the ARC workers include sorting donated clothing, hanging clothing on hangers, putting price tags on the clothing and other goods, sorting and cleaning bric-a-brac, testing electronics, rehabilitating furniture, and loading and unloading trucks with donated goods.  All the work performed is suffered or permitted by Defendant and is under the direction and control of employees of Defendant.

3.      In exchange for the ARC workers' full-time labor, Defendant pays wages to the ARC workers that start as low as approximately $7 per week and may increase each week up to a maximum of no more than approximately $25 per week, well below the minimum wage required by the FLSA.  As further compensation for the ARC workers' labor, Defendant provides ARC workers with dorm-like sleeping arrangements, board in the form of food that is at least in part donated by third parties or purchased with ARC workers' SNAP benefits, clothing that has been donated and would otherwise be sold in Defendant's thrift stores, and rudimentary rehabilitative services, the value of which is far below the required minimum wage.  ARC workers who complete the program often leave the ARC penniless and jobless, unable to survive economically in their communities.

4.      People applying to the ARCs who are unable to perform work for Defendant are ineligible to enroll in the ARCs.  Defendant typically expels from the program any ARC workers who, after being admitted to the program, become unable or unwilling to work, including if they become unable to work as a result of an injury sustained performing work for Defendant or because they fall ill.

5.      If ARC workers did not provide labor for Defendant, Defendant would have to pay other workers from the community to complete the tasks it

assigns to ARC workers.  Defendant employs other individuals to work side-by-side with ARC workers performing substantially the same duties for wages in compliance with the FLSA requirements.

6.     Because ARC workers are suffered or permitted to perform tasks for Defendant's benefit, under the direction and control of Defendant's employees, and with the expectation of receiving compensation from Defendant for their labor, Plaintiffs and all others similarly situated are Defendant's employees under the FLSA.  Nevertheless, Defendant has and at all relevant times has had a uniform policy or practice of failing to treat its ARC workers as employees.  It is well established under the FLSA that absent a specific exemption workers cannot waive their right to be compensated at the rates set forth by law.  As a result, Defendant has and at all relevant times has had a policy and practice, in violation of the FLSA, of failing to pay Plaintiffs and all those similarly situated workers federal minimum wage for all hours worked.  Defendant also failed to pay Plaintiffs Massey and Stough overtime compensation for all hours worked in excess of forty hours per week in violation of the FLSA.  These systemic violations have been and are occurring despite Defendant recently publicly acknowledging the importance of the minimum wage and overtime protections of the FLSA, particularly for the working poor, and stating its intention to comply with the minimum wage and overtime provisions of the FLSA for its lay

employees.

7.      Defendant at all relevant times knew that Plaintiffs and all those similarly situated workers were suffered and permitted to work for Defendant but were not paid wages at the required rate for their work, and willfully and intentionally engaged in a widespread policy or practice of failing and refusing to fully compensate Plaintiffs and all those similarly situated workers.  *See* 29 U.S.C. § 255.

8.      Plaintiffs bring this action for violations of the FLSA as a collective action, pursuant to 29 U.S.C. § 216(b), on behalf of the following proposed collective (the "FLSA Collective"):

> All persons who, between March 9, 2019 and the date of final judgment: (1) are, were, or will be enrolled in any Salvation Army Adult Rehabilitation Center or other programs operated by Defendant with similar work requirements ("ARC Program")—including, but not limited to, Alcohol Rehabilitation Programs, Adult Rehabilitation Programs, and Corps Salvage and Rehabilitation Centers; (2) did not or will not enroll in the ARC program to comply with a court order or condition of probation or parole; (3) perform, performed, or will perform work for Defendant; and (4) are, were, or will be paid less than the applicable federal minimum wage.

9.      Plaintiffs Stough and Massey each bring this action on behalf of themselves individually for failure to pay overtime as required by the FLSA.

10.      Plaintiffs Stough and Massey each bring this action on behalf of themselves individually for failure to pay overtime as required by the FLSA.

11.      Plaintiff Keigans, who enrolled in an ARC in Florida, also brings this

action on behalf of himself and the class defined below for violations of Florida

labor laws. *See infra* ¶ 59.

12.     Defendant is liable for its violations of federal and applicable state

laws.

13.     Accordingly, as set forth below, Plaintiffs seek unpaid

compensation, penalties, liquidated damages, pre- and post-judgment interest,

and attorneys' fees and costs pursuant to the FLSA on behalf of themselves and

others similarly situated.

## JURISDICTION

14.     This Court has jurisdiction over the FLSA claims pursuant to 28

U.S.C. § 1331 and 29 U.S.C. § 216(b).

15.     This Court has general jurisdiction over Defendant because

Defendant is incorporated and has its principal place of business in Georgia.

16.     This Court has jurisdiction over Count Three pursuant to 28 U.S.C. §

1367(a), as Plaintiff Keigans's state law individual and class claims form part of

the same case or controversy as Plaintiffs' FLSA claims.

17.     The action is properly before this Court and this Court has

jurisdiction over Count Three pursuant to the Class Action Fairness Act, 28

U.S.C. § 1332(d).  This is a civil class action that was commenced after February

18, 2005, in which the matter in controversy as to Count Three exceeds

$5,000,000, exclusive of interest and costs.  Plaintiff Keigans is a citizen of Florida, and thus a citizen of a different state than Defendant.  Plaintiff Keigans brings Count Three on behalf of a Florida class which, on information and belief, consists of more than 100 class members in the aggregate.  Upon information and belief, none of the exemptions to jurisdiction found in 28 U.S.C. § 1332(d)(3), (d)(4)(A), or (d)(4)(B) apply to this action.

## VENUE

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.  Accordingly, Defendant conducted and continues to conduct substantial business in this District, a substantial part of the transactions at issue took place in this District, and Defendant's liability arose, in part, in this District.

## PARTIES

### A.    Plaintiffs

19.     Plaintiff Raymon Alvear, Jr. is an adult resident of Texas.  Plaintiff Alvear entered the Salvation Army ARC in Fort Worth, Texas in December 2018 and left the program in July 2019.  He then entered the Salvation Army ARC in Dallas, Texas in June 2020 and left the program in August 2020. During the entire

period that he was a participant in the ARC, Plaintiff Alvear was required to work for Defendant, performing tasks that include working in the kitchen to prepare meals for all the ARC residents; sorting donated clothing in the warehouse and placing on hangers; cleaning and making minor repairs to donated upholstered furniture; and working in a Salvation Army store where he processed donations, unloaded donations from vehicles, and helped consumers to load purchases in vehicles.  He worked at least 8 hours a day, 5 days a week, in each job he performed.  Plaintiff Alvear was never paid the FLSA required minimum wage.  Instead, his weekly wages started at $7 per week and incrementally increased until he received wages of $25 per week, at which point wage increases stopped.  Plaintiff Alvear was suffered and permitted to work by Defendant, and his work was under the direction and control of Defendant. Plaintiff Alvear qualified as an employee of Defendant under the FLSA, 29 U.S.C. § 203(e)(1).

20.     Plaintiff Robert Massey is an adult resident of Georgia. Plaintiff Massey most recently entered the Salvation Army ARC in Memphis, Tennessee on or about January 2020; he left the program in March 2020.  During the entire period that he was a participant in the ARC, Plaintiff Massey was required to work for Defendant, performing tasks including loading and unloading trucks with donated furniture and other goods, alongside drivers who Plaintiff Massey

understood to be Salvation Army's acknowledged employees.  He worked at least 8 hours a day, 5 days a week in his job and worked additional hours on the weekend from time to time in addition to 40 hours during the week.  Plaintiff Massey was never paid either the FLSA required minimum wage or overtime wage.  Instead, his weekly wages started at $7 per week and incrementally increased until he received wages of $20 per week, at which point wage increases stopped.  Plaintiff Massey was suffered and permitted to work by Defendant, and his work was under the direction and control of Defendant.  Plaintiff Massey qualified as an employee of Defendant under the FLSA, 29 U.S.C. § 203(e)(1).

21.     Plaintiff David Joseph Stough is an adult resident of Alabama.  Plaintiff Stough entered the Salvation Army ARC in Birmingham, Alabama in August 2021 and left the program in November 2021.  During the entire period that he was a participant in the ARC, Plaintiff Stough was required to work for Defendant, performing tasks that include loading and unloading donations on trucks to be transferred to the Salvation Army warehouse.  His regular work schedule was 7:00 a.m. to 4:00 p.m., Monday through Friday, but he routinely worked as late as 6:00 p.m. and worked a full day every other Saturday.  Plaintiff Stough was never paid either the FLSA required minimum wage or overtime wages.  Instead, his weekly wages started at $7 per week and incrementally increased until he received wages of about $20 per week.  Plaintiff

Stough was suffered and permitted to work by Defendant, and his work was under the direction and control of Defendant. Plaintiff Stough qualified as an employee of Defendant under the FLSA, 29 U.S.C. § 203(e)(1).

22.    Plaintiff Keigans is an adult resident of Florida. Plaintiff Keigans entered the Salvation Army ARC in Miami, Florida on October 31, 2019 and left the program on February 1, 2020. During the entire period that he was a participant in the ARC, Plaintiff Keigans was required to work for Defendant, performing tasks that included sorting and hanging donated clothing, loading and unloading trucks with donated items, and collecting donations from those trying to donate clothing, furniture, and other items. He worked approximately eight hours a day, Monday through Friday. Plaintiff Keigans did not receive minimum wages for his labor. Instead, he was never paid more than $20 per week. Plaintiff Keigans was suffered and permitted to work by Defendant, and his work was under the direction and control of Defendant. Plaintiff Keigans qualified as an employee of Defendant under the FLSA, Fla. Stat. § 448.110, and the Florida Constitution, Article 10, § 24.

**B.    Defendant**

23.    Defendant is a 501(c)(3) organization incorporated in Georgia, with its headquarters located at 1424 Northeast Expressway NE, Atlanta, Georgia 30329.

10

24.     The Salvation Army National Corporation conducts its operations in the United States through four administrative territories: Eastern, Southern, Central, and Western.  Each territory is separately incorporated, has its own territorial commander serving as leader of the territory, and oversees programs and activities within its own designated geographic areas.  Defendant is responsible for the Southern Territory, which consists of Alabama, Arkansas, Florida, Georgia, Kentucky, Louisiana, Maryland, Mississippi, North Carolina, Oklahoma, South Carolina, Tennessee, Texas, Virginia, Washington, D.C., and West Virginia.

25.     Defendant is, and at all relevant times has been, an employer within the meaning of 29 U.S.C. §§ 203(d) and 203(g).

26.     Defendant is, and at all relevant times has been, an enterprise within the meaning of 29 U.S.C. § 203(r)(1).

27.     At all relevant times, Plaintiffs were Defendant's employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(s)(1), 206, and 207.

## FACTUAL ALLEGATIONS

28.     Thousands of individuals enroll in Defendant's ARC programs annually, often because they are poor, unhoused, sick, suffering from a substance use disorder, or simply have nowhere else to go.

29.     Defendant requires that, to enroll in and remain at an ARC, and in exchange for room, board, clothing, rehabilitative services, and nominal wages— the value of which is far below the required minimum wage—all ARC workers must perform assigned tasks for Defendant for at least forty hours per week, and frequently more.  ARC workers understand and expect that, in exchange for their labor, The Salvation Army will provide them with those benefits and compensation.  The Salvation Army touts the work requirement on its website, explaining that a person cannot enroll in an ARC program if he or she is not "[a]ble to perform a work therapy assignment for eight hours a day."

30.     Defendant generally requires every ARC worker to complete an intake with the Defendant before enrolling in the program.  Among other things, applicants may be asked to describe their work histories and any health or physical problems which might keep them from working.  Applicants must be able to work at least five days or forty hours per week.

31.     Once enrolled in the program, ARC workers, including Plaintiffs, perform tasks that are often physically grueling and sometimes dangerous.  Such tasks include loading, unloading, and hauling heavy furniture, home appliances, and other donations from trucks; sorting through mountains of donated clothing and other goods; cleaning, testing, and repairing donated goods; operating heavy machinery such as balers in large warehouses; driving or traveling on trucks to

pick up and drop off donated goods; and cleaning, organizing, and maintaining Defendant's thrift stores.

32.     The jobs performed by ARC workers are not in furtherance of any educational program and do not primarily further ARC workers' rehabilitation. In fact, Defendant requires ARC workers to work so many hours during the week that it leaves little time for the ARC workers to focus on rehabilitation. Moreover, Defendant does not provide ARC workers with job or skills training, nor any other training that would further ARC workers' employment once they leave the program.  Some ARC workers enter the ARCs with skilled training and experience and long histories of gainful employment.  Defendant does not provide any meaningful job placement assistance for ARC workers leaving the ARC.

33.     The jobs performed by ARC workers, including the jobs performed by Plaintiffs, directly, substantially, and primarily benefit and are essential to the operation of Defendant's multi-million dollar commercial thrift store operations. The ARC workers, including Plaintiffs, perform tasks assigned to them by Defendant and are under Defendant's direction and control while performing work.  Defendant's thrift stores, retail establishments that compete for business with other commercial enterprises selling used goods, could not operate without the labor of ARC workers. The ARC workers' labor for Defendant enables

Defendant to sell goods in commerce at Defendant's thrift stores, which compete for customers with other thrift stores that pay minimum wage or more.

34.    As of 2020, there were more than 1,000 Salvation Army branded thrift stores across the country.  Defendant's thrift stores generate millions of dollars in annual revenue for Defendant.  In 2019, The Salvation Army National Corporation reportedly generated $598,449,000 in revenue from sales at these thrift stores.

35.    Defendant also benefits from the jobs it requires some ARC workers to perform inside the ARCs themselves, like cleaning the common areas, kitchen work and menial administrative and clerical tasks.

36.    If Defendant did not receive the benefit of ARC workers' labor, Defendant would have to pay workers in compliance with the FLSA minimum wage laws to perform this work.  Some of Defendant's advertisements for paid positions at its ARCs describe job responsibilities, like sorting donations, tagging merchandise, and cleaning furniture donations, that are substantially the same as jobs performed by ARC workers.  Indeed, Defendant employs other individuals from the community to work side-by-side with ARC workers performing substantially the same duties.  Unlike ARC workers, Defendant pays these other employees market-rate wages that meet or exceed federal minimum wage requirements.

37.     Defendant controls all aspects of ARC workers' job assignments, including, but not limited to, the task each ARC worker must perform; the days of the week on which ARC workers must perform assigned tasks; the start and end time for shifts; the work location; the job duties for each position; the manner in which ARC workers are required to perform job duties; standards of performance; the rate of pay (or lack thereof) for each position; the training, if any, provided to ARC workers regarding the work they are required to perform; and all other working conditions.  Jobs are assigned and overseen by supervisors who are Defendant's fully paid employees.

38.     An ARC worker's refusal or inability to work is grounds for Defendant to expel the worker from the ARC, even if the worker follows all other program rules.  Defendant routinely expels workers from its ARCs if they become unable to perform assigned tasks because of illness or even injury suffered while performing tasks for Defendant.

39.     ARC workers who miss scheduled shifts, even for legitimate reasons like illness or injury, typically are required to make up those hours at a later date.

40.     The policies or practices for the ARCs provide that if ARC workers perform their assigned jobs for Defendant and abide by other program rules, they will be provided with food, clothing, shelter, rehabilitative services, and wages—sometimes in the form of "canteen cards" redeemable only at

Defendant's canteen and a meager amount of money, paid on an escalating scale. Defendant typically pays ARC workers approximately $7 per week for their work when they begin, with their wages to increase by $1 each week, before topping out at a maximum of no more than approximately $25 per week as they participate in Defendant's work program.  The policies and practices for the ARCs also provide that if ARC workers are unable or unwilling to perform assigned tasks, they will not receive these benefits as they will become ineligible to remain in the program.

41.     Defendant required Plaintiffs Stough and Massey to work more than forty hours per week.  Yet Defendant did not pay them overtime wages.

42.     Notwithstanding the significant benefits Defendant derives from jobs performed by ARC workers, and the ARC workers' expectation that they will be compensated for their labor, Defendant maintains, and for many years has maintained, a uniform policy of unlawfully failing to treat ARC workers as employees or pay them minimum wages.

43.     The policies or practices described herein are consistent across every ARC operated by Defendant.  Every ARC worker must perform their assigned tasks for at least forty hours per week as a condition of remaining in the program.  Defendant does not pay any ARC worker minimum wage for all hours worked.

44.     Defendant permits ARC workers to select for their personal use a limited number of clothing items from those donated to the Salvation Army. ARC workers must live on-site, typically in assigned sleeping areas and dormitory settings with shared showers, toilets, and sinks.  While enrolled in an ARC program, ARC workers are reliant on Defendant for food and shelter.

45.     Although workers typically are not charged a fee to participate in the ARC programs, Defendant requires them to relinquish to Defendant SNAP benefits they are already receiving or to sign up for SNAP benefits if they are eligible and have not already enrolled and then turn over the benefits to Defendant.

46.     ARC workers generally stop performing jobs for Defendant in ARC programs when they complete Defendant's program (i.e., "graduate") (typically after 180 days), leave voluntarily, or are expelled.  The ARCs provide no meaningful job placement services for those leaving the program.  Upon information and belief, only a small percentage of workers successfully complete Defendant's ARC programs.  Many leave or are expelled from the program prior to completion.  Some are required to stay longer than 180 days as discipline for supposed infractions of ARC rules.

47.     At all relevant times, Defendant was aware that ARC workers were paid no more than a few dollars per week despite working at least forty hours.

48.     Defendant willfully denied Plaintiffs and all those similarly situated minimum wages for all time worked.

49.     By failing to treat Plaintiffs and all those similarly situated as employees and failing to pay minimum wage, Defendant has sought to avoid various duties and obligations owed to employees under the FLSA, as well as the laws of Florida.  Through this action, Plaintiffs challenge Defendant's unlawful policy of failing to satisfy its duty to pay proper wages to ARC workers.

## COLLECTIVE ACTION ALLEGATIONS

50.     Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) on behalf of themselves and the proposed FLSA Collective, defined as:

> All persons who, between March 9, 2019 and the date of final judgment: (1) are, were, or will be enrolled in any Salvation Army Adult Rehabilitation Center or other programs operated by Defendant with similar work requirements ("ARC Program")—including, but not limited to, Alcohol Rehabilitation Programs, Adult Rehabilitation Programs, and Corps Salvage and Rehabilitation Centers; (2) did not or will not enroll in the ARC Program to comply with a court order or condition of probation or parole; (3) perform, performed, or will perform work for Defendant; and (4) are, were, or will be paid less than the applicable federal minimum wage.

51.     Plaintiffs and all members of the proposed FLSA Collective are similarly situated.  They were subject to substantially similar job requirements, pay provisions, and a common policy or practice that required or permitted them to perform work for the benefit and at the direction of Defendant without receiving proper wages.

52.     Plaintiffs estimate that there are thousands of similarly situated current and former workers in Defendant's ARC programs whose rights to federal minimum wages are, were, and will be violated by Defendant.

53.     Defendant knew that Plaintiffs and the proposed FLSA Collective performed work that required them to be compensated at the federal minimum wage.  Defendant willfully and intentionally failed to properly compensate these individuals as required by the FLSA.

54.     Defendant is liable under the FLSA for failing to properly compensate Plaintiffs and the proposed FLSA Collective, and as such, notice should be sent to the FLSA Collective.  There are numerous similarly situated current and former workers in Defendant's ARCs who have been denied proper minimum wage in violation of the FLSA who would benefit from the issuance of Court-supervised notice of this lawsuit and the opportunity to join.

55.     Those similarly-situated employees are known to Defendant and are readily identifiable through its records.

56.     Plaintiffs and members of the proposed FLSA Collective should therefore be permitted to pursue their claims collectively, pursuant to 29 U.S.C. § 216(b).

57.     A collective action will provide the most efficient mechanism for adjudicating the claims of Plaintiffs and the members of the proposed FLSA

19

Collective.

58.     Plaintiffs request that they be permitted to serve as representatives

for those who consent to participate in this action and that the action be granted

collective action status pursuant to 29 U.S.C. § 216(b).

### RULE 23 CLASS ACTION ALLEGATIONS

59.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiff Keigans

seeks to certify the following class:

> All persons who, between May 17, 2017 and the date of final judgment: (1)
> are, were, or will be enrolled in any Salvation Army Adult Rehabilitation
> Center or other programs operated by Defendant with similar work
> requirements ("ARC Program")—including, but not limited to, Alcohol
> Rehabilitation Programs, Adult Rehabilitation Programs, and Corps
> Salvage and Rehabilitation Centers—in Florida; (2) did not or will not
> enroll in the ARC Program to comply with a court order or condition of
> probation or parole; (3) perform, performed, or will perform work for
> Defendant; and (4)  are, were, or will be paid less than the applicable
> Florida minimum wage.

60.     The proposed class is easily ascertainable because it is defined using

objective criteria that establish class membership with definite boundaries.

61.     The claims of the Florida Class (the "Class") herein have been

brought and may properly be maintained as a class action under Rule 23 of the

Federal Rules of Civil Procedure because (1) the Class is so numerous that

joinder of all class members is impracticable; (2) there are questions of law and or

fact common to the Class; (3) the claims of the Class representative are typical of

the claims of the Class he seeks to represent; and (4) the proposed Class

representative and their counsel will fairly and adequately protect the interests of the Class. In addition, the questions of law or fact that are common to the Class predominate over any questions affecting only individual class members and a class action is superior to other available means for fairly and efficiently adjudicating the controversy, making this case suitable for class treatment under Rule 23(b)(3).

62.   <u>Numerosity</u>: Although the precise number of Class members is unknown and can only be determined through appropriate discovery, the Class, as defined herein, is so numerous that joinder would be impracticable.  Plaintiff Keigans is informed and believes, and based on such information and belief, alleges that there are likely several thousand Class members.  The names and addresses of other Class members are available to Defendant.  Notice can be provided to Class members via first class mail or email using techniques and a form of notice similar to those customarily used in class action lawsuits of this nature.

63.   <u>Commonality and Predominance of Common Questions</u>: Plaintiff Keigans and the members of the Class that he seeks to represent have all been harmed by Defendant's failure to compensate ARC workers at the applicable minimum wage on an hourly basis and for all hours worked.  Accordingly, there is a well-defined commonality of interest in the questions of law and fact

applicable to Plaintiff Keigans and the Class.  These questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class, making class treatment suitable under Rule 23(b)(3). These common questions of law and fact include, without limitation:

a.      Whether Plaintiff Keigans and members of the Class were employees of Defendant under Florida law;

b.      Whether Defendant failed to pay Plaintiff Keigans and the members of the Class the applicable Florida minimum wage for all hours worked;

c.      Whether Defendant violated Fla. Stat. § 448.110, and the Florida Constitution, Article 10, § 24 by failing to pay Plaintiff Keigans and the Class the applicable Florida minimum wage;

d.      Whether Defendant's actions were willful pursuant to Fla. Stat. § 95.11(2)(d);

e.      The proper measure of damages, restitution, interest, and penalties owed to Plaintiff Keigans and the Class.

64.    Typicality: Plaintiff Keigans's claims are typical of the claims of members of the Class. Defendant's common course of unlawful conduct has caused Plaintiff Keigans and members of the Class to sustain the same or similar injuries and damages.  All members of the Class were subject to the same

compensation policies or practices, through which they were not paid minimum wage. Defendant's policies or practices affected all members of the Class similarly, and Defendant benefited from the same type of wrongful acts against each class member. Plaintiff's claims are thereby typical of and co-extensive with the claims of members of the Class, and the relief sought is typical of the relief that could be sought by each member of the Class in separate actions.

65.   <u>Adequacy of Representation</u>: Plaintiff Keigans is a member of the Class that he seeks to represent, does not have any conflicts of interest with the Class, and will prosecute the case vigorously on behalf of the Class he seeks to represent. Plaintiff Keigans will fairly and adequately represent and protect the interests of the Class he seeks to represent. Counsel for Plaintiff are competent and experienced in litigating large, complex employment class actions, including large wage and hour class actions.

66.   <u>Superiority</u>: Pursuit of this action collectively will provide the most efficient mechanism for adjudicating the claims of Plaintiff Keigans and members of the proposed Class. Individual joinder of all class members is impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the necessary duplication of effort and expense that numerous individual actions engender. The expense and burden of individual litigation by

members of the Class makes it impractical for members of the Class to seek

redress individually for the wrongful conduct alleged herein.  Because the losses,

injuries, and damages suffered by each of the individual Class members are

small in the sense pertinent to class action analysis, the expense and burden of

individual litigation would make it extremely difficult or impossible for the

individual class members to redress the wrongs done to them.  Indeed, Plaintiffs

are unaware of any other litigation initiated by other Florida Class members.

Should separate actions be brought, or be required to be brought, by each

member of the Class, the resulting multiplicity of lawsuits would cause undue

hardship and expense for the Court and the litigants.  The issues in this action

can be decided by means of common, classwide proof, such as Salvation Army's

policies and classwide practices and testimony from Salvation Army's employees

concerning these policies and practices.  In addition, if appropriate, the Court can

and is empowered to fashion methods to efficiently manage this action as a class

action.  The prosecution of separate actions would also create a risk of

inconsistent rulings, which might be dispositive of the interests of other members

of the Class who are parties to the adjudication and/or may substantially impede

their ability to adequately protect their interests.

**COUNT ONE**
**Unlawful Failure to Pay Minimum Wage**
**Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.***
*Plaintiffs on behalf of the FLSA Collective*

67.     The allegations of the preceding paragraphs are re-alleged and incorporated herein by reference.  Plaintiffs and the FLSA Collective assert this count pursuant to 29 U.S.C. § 216(b).  Plaintiffs consent to join this action.  Copies of Plaintiffs Alvear, Jr., Massey, and Stough's consents to sue were attached to the initial Complaint as an exhibit. ECF No. 1.  A copy of Plaintiff Keigans's consent to join was filed at ECF No. 22.  As this action proceeds, it is likely that other individuals will sign consent forms and join as plaintiffs.

68.     At all relevant times, Defendant was an employer engaged in commerce and/or in the production of goods for commerce within the meaning of the FLSA.  *See* 29 U.S.C. §§ 203(b), 203(s)(1).

69.     At all relevant times, Defendant employed Plaintiffs and the proposed FLSA Collective, and Plaintiffs and the proposed FLSA Collective were Defendant's employees, within the meaning of the FLSA.  *See* 29 U.S.C. §§ 203(e), 203(g).

70.     At all relevant times, Defendant has had a gross operating revenue in excess of $500,000.

71.     The FLSA requires covered employers like Defendant to pay employees like Plaintiffs and the proposed FLSA Collective federal minimum wage for hours worked.  *See* 29 U.S.C. § 206(a).

72.     Plaintiffs and the proposed FLSA Collective's employment do not

fall under any of the exemptions to the minimum wage requirements of the FLSA. *See* 29 U.S.C. § 213.

73.    At all relevant times, Defendant failed to pay Plaintiffs and the proposed FLSA Collective at least federal minimum wage for their work.

74.    At all relevant times, Defendant knew that Plaintiffs and the proposed FLSA Collective were not paid federal minimum wage for their work, and willfully and intentionally engaged in a widespread policy or practice of failing and refusing to pay Plaintiffs and the proposed FLSA Collective federal minimum wage. *See* 29 U.S.C. § 255. Defendant is a large and sophisticated entity familiar with the requirements of the FLSA. Defendant's violations were willful because it knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA.

75.    Defendant's willful failure and refusal to pay Plaintiffs and the proposed FLSA Collective federal minimum wage for hours worked violates the FLSA. *See* 29 U.S.C. § 206.

76.    As a direct and proximate result of these unlawful practices, Plaintiffs and the proposed FLSA Collective suffered and continue to suffer wage loss and are therefore entitled to recover unpaid minimum wages for up to three years prior to the filing of their claims, liquidated damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable

relief as the Court deems just and proper.

**COUNT TWO**
**Unlawful Failure to Pay Overtime**
**Fair Labor Standards Act, 29 U.S.C. § 201** *et seq.*
*Plaintiffs Stough and Massey*

77.     The allegations in the preceding paragraphs are re-alleged and incorporated herein by reference.

78.     Plaintiffs Stough and Massey assert this count pursuant to 29 U.S.C. § 216(b).  Plaintiffs Stough and Massey consent to join this action.  Copies of their consents to sue were attached to the initial Complaint as an exhibit. ECF No. 1.

79.     At all relevant times, Defendant was an employer engaged in commerce and/or in the production of goods for commerce within the meaning of the FLSA.  *See* 29 U.S.C. §§ 203(b), 203(s)(1).

80.     At all relevant times, Defendant employed Plaintiffs Stough and Massey, and Plaintiffs Stough and Massey were Defendant's employees within the meaning of the FLSA.  *See* 29 U.S.C. §§ 203(e), 203(g).

81.     At all relevant times, Defendant has had a gross operating revenue in excess of $500,000.

82.     The FLSA requires covered employers like Defendant to pay employees like Plaintiffs Stough and Massey no less than one-and-a-half times their regular rate of pay for all hours worked in excess of forty in a workweek. *See* 29 U.S.C. § 207.

83.     Plaintiff Stough's and Plaintiff Massey's employment do not fall under any of the exemptions to the overtime requirements of the FLSA.  *See* 29 U.S.C. § 213.

84.     As described above, Plaintiffs Stough and Massey worked more than forty hours per week for Defendant.

85.     At all relevant times, Defendant did not properly compensate Plaintiff Stough or Massey for all hours worked in excess of forty in a workweek, as required by the FLSA.

86.     At all relevant times, Defendant knew that Plaintiffs Stough and Massey worked overtime without proper compensation, and willfully and intentionally failed and refused to pay Plaintiffs Stough and Massey wages at the required overtime rates.  *See* 29 U.S.C. § 255.

**COUNT THREE**
**Unlawful Failure to Pay Minimum Wage**
**Florida Minimum Wage Act, Fla. Stat. § 448.110**
*Plaintiff Keigans on behalf of the Florida Class*

87.     The allegations in the preceding paragraphs are re-alleged and incorporated herein by reference.

88.     Plaintiff Keigans asserts this count pursuant to the Florida Minimum Wage Act (Fla. Stat. § 448.110) and the Florida Constitution, Article X, section 24.

89.     At all relevant times, Defendant employed Plaintiff Keigans, and Plaintiff was Defendant's employee within the meaning of Fla. Stat. § 448.110(3)

28

and Fla. Const. art. X, § 24(b).

90.    The Florida Minimum Wage Act and the Florida Constitution
requires covered employers like Defendant to pay employees like Plaintiff
Keigans and the Florida Class the Florida-mandated minimum wage for hours
worked. Fla. Stat. § 448.110(3)-(4).

91.    Plaintiff Keigans and the Florida Class's employment do not fall
under any of the exemptions to the minimum wage requirements of the Florida
Minimum Wage Act. Fla. Stat. § 448.110.

92.    At all relevant times, the Florida minimum wage has been at least
$8.10.[1]

93.    At all relevant times, Defendant paid Plaintiff Keigans, as well as the
putative Florida class members less than $25 per week.

94.    At all relevant times, Defendant failed to pay Plaintiff Keigans and
the Florida Class at least the Florida-mandated minimum wage for their work.

95.    As a direct and proximate result of Defendant's unlawful practices,

_____

[1] The Florida Department of Economic Opportunity periodically calculates and
publishes an adjusted state minimum wage, which can be found on its website,
Fla. Dep't of Econ. Opportunity, *DEO*, https://www.floridajobs.org/ (last
visited June 1, 2022).  The Florida minimum wage was $8.10 as of January 1, 2017;
$8.25 as of January 1, 2018; $8.46 as of January 1, 2019; $8.56 as of January 1, 2020;
$8.65 as of as of January 1, 2021; $10.00 as of September 30, 2021; and will be
$11.00 as of September 30, 2022.

Plaintiff Keigans and the Florida Class suffered and continue to suffer wage loss and therefore seek damages in the amount of unpaid wages, liquidated damages, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

96.     On May 16, 2022, Plaintiff Keigans sent notice in writing via FedEx overnight delivery to Defendant, informing defendant of Plaintiff Keigans's demand for unpaid wages, on behalf of himself and the Florida Class.  The notice is attached as Exhibit A.  Defendant received the notice on May 17, 2022.  Fifteen calendar days have passed, and Defendant has not paid the total amount of unpaid wages owed or otherwise resolved Plaintiff Keigans's claim or the claims of the Florida Class, such that Plaintiff Keigans and the Florida Class have exhausted their administrative remedies under Fla. Stat. § 448.110(6)(a)-(b) and may now file this claim.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, and all those similarly situated, collectively request that this Honorable Court:

1.      Issue an order certifying this action as a collective action under the FLSA and designating Plaintiffs as representatives of all those similarly situated, 29 U.S.C. § 216(b).

2.      Authorize that notice of this collective action be issued by the Court

or Plaintiffs to all persons who have participated in Defendant's ARCs at any time during the three years immediately preceding the filing of this suit, up through and including the date this notice is issued.  Such notice shall inform these persons of the filing of this civil action, the nature of the action, and their right to join this lawsuit if they believe they were denied proper wages pursuant to 29 U.S.C. § 216(b).

3.      Grant leave to add additional plaintiffs or claims by motion, the filing of consent forms, or any other method approved by the Court.

4.      Issue an order certifying the Florida Class pursuant to Federal Rule of Civil Procedure 23.

5.      Issue an order appointing Plaintiff Keigans as class representative of the Florida Class.

6.      Issue an order appointing Plaintiffs' counsel as Class Counsel for the Florida Class.

7.      Issue an order providing for notice to the Class.

8.      Enter a declaratory judgment that Defendant's violations were unlawful under the FLSA and were willful.

9.      Award Plaintiffs and all those similarly situated actual damages for unpaid wages and liquidated damages equal to the unpaid wages found due to Plaintiffs and the proposed FLSA Collective as provided by the FLSA, 29 U.S.C. §

31

216(b).

10.     Award Plaintiffs and all those similarly situated pre- and post-judgment interest at the relevant statutory rate as provided by the FLSA, 29 U.S.C. § 216(b).

11.     Award Plaintiffs and all those similarly situated attorneys' fees, costs (including expert fees), and disbursements as provided by the FLSA, 29 U.S.C. § 216(b).

12.     Award Plaintiff Keigans and the Florida Class actual damages for unpaid wages, liquidated damages, attorneys' fees, and costs, as provided under Florida law.

13.     Award Plaintiffs, the Florida Class, and all others similarly situated further legal and equitable relief as this Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiffs, on behalf of themselves, all others similarly situated, and the Florida Class, hereby demand a trial by jury on all issues so triable.


DATED:  June 1, 2022                Respectfully submitted,

                                    COHEN MILSTEIN SELLERS & TOLL PLLC

                                    By:  */s/ Christine E. Webber*
                                            Christine E. Webber (admitted *pro hac vice*)
                                            Joseph M. Sellers (admitted *pro hac vice*)

Rebecca A. Ojserkis* (admitted *pro hac vice*)
1100 New York Ave., N.W., Suite 500
Washington, D.C.  20005
Tel.:  (202) 408-4600
Fax:  (202) 408-4699
cwebber@cohenmilstein.com
jsellers@cohenmilstein.com
kkotagal@cohenmilstein.com
rojserkis@cohenmilstein.com

*Admitted only in New York and Maryland; Supervision by Christine Webber, Joseph Sellers, and Kalpana Kotagal, members of the D.C. Bar*

Michael Hancock (admitted *pro hac vice*)
Cohen Milstein Sellers & Toll PLLC
88 Pine Street, 14th Floor
New York, NY  10005
Tel.:  (212) 838-7797
Fax:  (212) 838-7745
mhancock@cohenmilstein.com

ROSEN BIEN GALVAN & GRUNFELD LLP

By:  /s/ Michael Freedman
Gay Grunfeld (admitted *pro hac vice*)
Michael Freedman (admitted *pro hac vice*)
Priyah Kaul (admitted *pro hac vice*)
101 Mission Street, 6th Floor
San Francisco, CA  94105
Tel.:  (415) 433-6830
Fax:  (415) 433-7104
ggrunfeld@rbgg.com
mfreedman@rbgg.com
pkaul@rbgg.com

RUKIN HYLAND & RIGGIN LLP

By: /s/ *Valerie Brender*
   Valerie Brender (admitted *pro hac vice*)
   Jessica Riggin (admitted *pro hac vice*)
   1939 Harrison St., Suite 290
   Oakland, CA 94612
   Tel.:  (415) 421-1800
   Fax:  (415) 421-1700
   jriggin@rukinhyland.com
   vbrender@rukinhyland.com

RADFORD & KEEBAUGH, LLC

By: /s/ *James Radford*
   James Radford
   Georgia Bar No. 108007
   Daniel Werner
   Georgia Bar No. 422070
   Radford & Keebaugh, LLC
   315 W. Ponce de Leon Avenue
   Suite 1080
   Decatur, Georgia 30030
   Tel: (678) 271-0302
   james@decaturlegal.com

*Attorneys for Plaintiffs*