## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| RAYMON ALVEAR, JR., ROBERT MASSEY, DAVID STOUGH, and ANDREW KEIGANS, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>THE SALVATION ARMY, a Georgia Corporation,<br><br>        Defendant. | Civil Action No. 1:22-cv-979-SEG |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT THE SALVATION ARMY, A GEORGIA CORPORATION'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT – CLASS AND COLLECTIVE ACTION <u>PURSUANT TO FED. R. CIV. P. 12(B)(6)</u>

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...............................................................................1

FACTUAL BACKGROUND.................................................................................3

LEGAL STANDARD...........................................................................................6

ARGUMENT.......................................................................................................7

I.    The First Amended Complaint Fails to State a Claim Under the FLSA Because Plaintiffs Have Not Plausibly Pleaded that Beneficiaries of the Georgia Corporation's ARCs Are Employees Under the FLSA....................7

    A.    The mere performance of work therapy at the direction and control of the Georgia Corporation does not render Plaintiffs employees under the FLSA. ........................................................................................7

    B.    Plaintiffs have not plausibly pled that the economic reality reflects an employment relationship between Plaintiffs and the Georgia Corporation.......................................................................................12

        1.    Plaintiffs cannot plausibly allege that they had any expectation of compensation. ....................................................................14

        2.    Plaintiffs fail to plausibly allege that the Georgia Corporation is the primary beneficiary of their rehabilitation relationship......17

II.    The First Amended Complaint Cannot Plausibly Allege Employee Status Under Florida Law Because the Standard for Employee Parallels the FLSA. ...............................................................................................................21

III.    The First Amended Complaint Also Fails to State a Claim that the Georgia Corporation Willfully Violated the FLSA...................................................21

CONCLUSION.................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta v. Cathedral Buffet, Inc.*
   887 F.3d 761 (6th Cir. 2018) ......................................................................11

*Am. Dental Ass'n v. Cigna Corp.*,
   605 F.3d 1283 (11th Cir. 2010) ...................................................................6

*Anagnos v. Nelsen Residence, Inc.*,
   721 F. App'x 901 (11th Cir. 2018).............................................................21

*Armento v. Asheville Buncombe Cmty., Christian Ministry, Inc.*,
   856 F. App'x. 445 (4th Cir. 2021) .............................................................10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).....................................................................................17

*Bautista v. El Coyote Mex Rest., Inc.*,
   2014 WL 2465327 (N.D. Ala. May 30, 2014) .................................................22

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...........................................................................6, 7, 16

*Bennett v. Frank*,
   395 F.3d 409 (7th Cir. 2005) ......................................................................11

*Berger v. Nat'l Collegiate Athletic Ass'n*,
   843 F.3d 285 (7th Cir. 2016) .......................................................................7

*Danneskjold v. Hausrath*,
   82 F.3d 37 (2d Cir. 1996) ......................................................................8, 11

*Doyle v. City of N.Y.*,
   91 F. Supp. 3d 480 (S.D.N.Y. 2015) .....................................................10, 18

*Freeman v. Key Largo Volunteer Fire & Rescue Dep't., Inc.*,
   494 F. App'x. 940 (11th Cir. 2012)........................................................8, 11

*Freeman v. Key Largo Volunteer Fire & Rescue Dep't, Inc.*,
    841 F. Supp. 2d 1274 (S.D. Fla.), *aff'd,* 494 F. App'x 940 (11th Cir.
    2012) ................................................................................................................2

*Glatt v. Fox Searchlight Pictures, Inc.*,
    791 F.3d 376 (2d Cir. 2015), *superseded* by 811 F.3d 528 (2d Cir. 2016) ....................................................................................................9

*Glatt v. Fox Searchlight Pictures, Inc.*,
    811 F.3d at 531 ...................................................................10, 17, 18

*Guevara v. I.N.S.*,
    902 F.2d 394 (5th Cir. 1990) ...........................................................11

*Harker v. State Use Indus.*,
    990 F.2d 131 (4th Cir. 1993) ...........................................................11

*Isaacson v. Penn. Cmty. Servs.*,
    450 F.2d 1306 (4th Cir. 1971) .........................................................11

*Jensen v. Defenders Sec. Co.*,
    2018 WL 3910851 (N.D. Ga. July 25, 2018) .....................................7

*Jones v. IndustryPro.com, Inc.*,
    2021 WL 2593768 (N.D. Ga. Mar. 2, 2021) ....................................10

*Kaplan v. Code Blue Billing & Coding, Inc.*,
    504 F. App'x 831 (11th Cir. 2013)...................................................22

*McKay v. Miami-Dade Cnty.*,
    36 F.4th 1128 (11th Cir. 2022) ........................................................17

*Ndambi v. CoreCivic, Inc.*,
    990 F.3d 369 (4th Cir. 2021) ...........................................................11

*Roberts v. Gwinnett Cnty., Ga.*,
    225 F. Supp. 3d 1400 (N.D. Ga. 2016)........................................12, 13

*Schumann v. Collier Anesthesia, P.A.*,
    803 F.3d 1199 (11th Cir. 2015) ..............................8, 9, 10, 13, 17, 20

*Solis v. Laurelbrook Sanitarium & Sch., Inc.*,
    642 F.3d 518 (6th Cir. 2011) ...........................................................10

*Steelman v. Hirsch*,
   473 F.3d 124 (4th Cir. 2007) .........................................................................8, 11

*Tony and Susan Alamo Foundation v. Secretary of Labor*,
   471 U.S. 290 (1985)...........................................................................................14

*Vanskike v. Peters*,
   974 F.2d 806 (1992)......................................................................................11, 12

*Vaughn v. Phoenix House Found., Inc.*,
   2019 WL 568012 (S.D.N.Y. Feb. 12, 2019), *aff'd sub nom. Vaughn
   v. Phoenix House N.Y. Inc.*, 957 F.3d 141 ....................................................18, 19

*Vaughn v. Phoenix House N.Y. Inc.*,
   957 F.3d 141 (2d Cir. 2020) ..................................................3, 10, 17, 18, 19, 20

*Velarde v. GW GJ, Inc.*,
   914 F.3d 779 (2d Cir. 2019) .............................................................................10

*Villarreal v. Woodham*,
   113 F.3d 202 (11th Cir. 1997) ......................................................7, 8, 9, 11, 12

*Walker v. Freedom Rain, Inc.*,
   2017 WL 897592 (N.D. Ala. Mar. 7, 2017) ......................................................20

*Walling v. Portland Terminal Co.*,
   330 U.S. 148 (1947)...........................................................2, 8, 13, 15, 17, 20

*Williams v. Strickland*,
   87 F.3d 1064 (9th Cir. 1996) .................... 2, 3, 4, 5, 6, 10, 14, 15, 16, 19, 20, 22

**Statutes**

29 U.S.C. § 203(d), (e)(1), (g) ...................................................................................8

Florida Minimum Wage Act, Fla. Stat. § 448.110(3) (2012) .................................21

**Other Authorities**

7 C.F.R. § 273.11(e)-(h)..............................................................................................5

# TABLE OF AUTHORITIES
(continued)

Supplemental Nutrition Assistance Program, Benefits.gov,
https://www.benefits.gov/benefit/361 (accessed July 5, 2022) ............................5

Defendant, The Salvation Army, a Georgia nonprofit corporation (the "Georgia Corporation"), submits this Memorandum of Law in Support of its Motion to Dismiss.

## PRELIMINARY STATEMENT

Among its many charitable good works, the Georgia Corporation operates religious-based, holistic, residential rehabilitation programs at multiple locations (herein, "Adult Rehabilitation Centers" or "ARCs"), generally available free-of-charge to vulnerable individuals who are disaffiliated from society for a variety of reasons ("Beneficiaries"). Beneficiaries have access to the many critical components of these programs, including spiritual counseling, attending religious worship services and Bible study, personalized counseling services, recreational activities, as well as work therapy. The work therapy component is designed to provide Beneficiaries with a sense of self-worth and accomplishment, and to enable them to reintegrate into society and return to (or secure for the first time) gainful employment. Beneficiaries are provided with food and housing to enable them to focus on their rehabilitation and to ensure that they remain in a supportive environment.

Plaintiffs contend that their time spent doing work therapy constitutes employment under the Fair Labor Standards Act ("FLSA" or the "Act") and

Florida state wage and hour laws.  But Plaintiffs do not, and cannot, plausibly plead that work therapy in any way resembles the traditional bargained-for exchange of labor that defines employment under the FLSA or its state analog.  Rather, Plaintiffs misapprehend the definition of "employee," disregarding *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947), where the Supreme Court observed that the FLSA "was obviously not intended to stamp all persons as employees who, without any express or implied compensation agreement, might work for their own advantage on the premises of another."  Plaintiffs' conclusory allegations that they are "employees" under the Act do not provide the factual context necessary to make these allegations plausible.  *Freeman v. Key Largo Volunteer Fire & Rescue Dep't, Inc.,* 841 F. Supp. 2d 1274, 1279 (S.D. Fla.), *aff'd,* 494 F. App'x 940 (11th Cir. 2012) ("Conclusory allegations of employment are insufficient to withstand dismissal.").

Consistent with *Portland Terminal* and other precedents, the Ninth Circuit 25 years ago held that Beneficiaries were not employees of the Georgia Corporation's Salvation Army affiliate in the Western United States.  In *Williams v. Strickland*, 87 F.3d 1064, 1067 (9th Cir. 1996), the Ninth Circuit rejected the exact claim Plaintiffs raise here, finding that the relationship between The Salvation Army and the plaintiff, an ARC Beneficiary in California, was "solely

rehabilitative" and did not constitute employment.  Specifically, the court found

the fact that the plaintiff had *no* expectation of compensation, either express or

implied, to be fatal to his claim.  *Id.*  The Second Circuit recently adopted a similar

approach with respect to the status of individuals in a residential substance abuse

treatment program.  In *Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141 (2d Cir.

2020) ("*Vaughn II*"), the Second Circuit rejected an FLSA wage claim by a

participant in the program who was required to participate in work therapy, finding

the participant to be the primary beneficiary of the rehabilitation program, thus

rendering his claim of employment implausible.  As explained below, well-

reasoned, controlling authority demonstrates that Plaintiffs cannot allege a

plausible claim under the FLSA or state law.

Plaintiffs also fail to plead sufficient facts to support a plausible claim for a

*willful* violation of the FLSA.

## FACTUAL BACKGROUND

The Salvation Army is an international religious denomination and charitable

organization, a branch of the Christian Church, founded in England in 1865.

Separate regionally-based religious non-profit corporations operate its numerous

religious and charitable programs in the United States.  Plaintiffs allege that the

Georgia Corporation owns and operates approximately 26 ARCs within the 15 states

and District of Columbia that comprise The Salvation Army's Southern Territory.

First Amended Complaint – Class and Collective Action, ECF No. 39 ("FAC") ¶¶ 1,

24.

ARC programs are designed to provide for the spiritual and social

rehabilitation of disaffiliated persons generally, including people who are

"unhoused or marginally housed, who are very poor, who have drug or alcohol

addiction problems, who are entangled in the criminal justice system, and/or who

suffer from mental illness[.]"  FAC ¶ 1.  Through its ARC programs, the Georgia

Corporation provides food, shelter, clothing, and rehabilitative services, free of

charge in most cases, to thousands of vulnerable individuals annually.  FAC ¶¶ 1,

3.

Enrollment into an ARC program is voluntary.  Some individuals seek out

the programs on their own, while others are offered the choice to enroll in an ARC

as an alternative to incarceration.  FAC ¶ 1; *see also Strickland*, 87 F.3d at 1065

(describing how Williams "applied for admission" to the ARC "seeking help for

drinking, religious, and employment problems").  These programs are intended to

provide short-term spiritual, social, and emotional assistance and prepare

Beneficiaries to re-enter society and return to gainful employment (or find

employment for the first time).  *See id.* at 1067-68.  Beneficiaries typically remain

in the ARC programs for 180 days or fewer.  FAC ¶ 46.  ARC programs are

generally made available at no charge to Beneficiaries; however, as Plaintiffs

allege, Beneficiaries who receive certain government-provided benefits are asked

to "turn these benefits over" to the Georgia Corporation for the duration of their

stay to "offset the costs of [their] room, board, and clothing."  *Strickland*, 87 F.3d

at 1067; *see also* FAC ¶¶ 3, 45 (asserting that Beneficiaries are "require[d] . . . to

relinquish to Defendant SNAP[1] benefits they are already receiving or to sign up for

SNAP benefits if they are eligible . . . and then turn over the benefits to

Defendant").

Beneficiaries are required to participate in work therapy during their time at

an ARC.  Work therapy is designed to teach the Beneficiary good work habits and

to restore self-esteem.  *Strickland*, 87 F.3d at 1067.  The Georgia Corporation

considers work therapy to be a critical component of its spiritually-based

rehabilitation programs.  Beneficiaries do not receive compensation for their time

---

[1] The Supplemental Nutrition Assistance Program ("SNAP") is a federal benefits program through which eligible low-income individuals receive a debit card through which they can purchase food at retail stores. *See* Supplemental Nutrition Assistance Program, Benefits.gov, https://www.benefits.gov/benefit/361 (accessed July 5, 2022).  The statute and regulations authorize certain programs to utilize these benefits to provide food to eligible individuals.  *See, e.g.*, 7 C.F.R. § 273.11(e) (drug and alcohol rehabilitation programs); 7 C.F.R. § 273.11(f) (group living arrangements); 7 C.F.R. § 273.11(g) (shelters for battered women and children); and 7 C.F.R. § 273.11(h) (authorized homeless meal providers).

spent doing work therapy, as the purpose of this work is solely to aid in their rehabilitation. *Id.* Indeed, upon enrollment, an "Admittance Statement" is required to be signed by all Beneficiaries, acknowledging that they understand that they are beneficiaries, not employees, of the Georgia Corporation, and that their "admission and continued residence is dependent upon . . . needing such assistance . . . ." *Strickland*, 87 F.3d at 1065. Beneficiaries receive a small gratuity, typically starting at $7 per week, intended to allow them to purchase small items at the canteen located in the ARC. FAC ¶¶ 3, 40. The gratuity is provided solely on the basis of a Beneficiary's progress in the rehabilitation programs, and is not tied to the quality or quantity of work therapy performed. *See* FAC ¶ 40 (noting that the gratuity is "paid on an escalating scale," increasing "by $1 each week" until they reach a designated maximum).

## LEGAL STANDARD

To survive a motion to dismiss, plaintiffs bear the burden to "state a claim to relief that is plausible on its face." *Am. Dental Ass'n v. Cigna Corp.,* 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although the factual allegations of a complaint must generally be taken as true when ruling on a motion to dismiss, a court should not accept 'conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as

facts.'" *Jensen v. Defenders Sec. Co.,* 2018 WL 3910851, at *3 (N.D. Ga. July 25, 2018). Plausibility "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545.

## ARGUMENT

I. **The First Amended Complaint Fails to State a Claim Under the FLSA Because Plaintiffs Have Not Plausibly Pleaded that Beneficiaries of the Georgia Corporation's ARCs Are Employees Under the FLSA.**

A. **The mere performance of work therapy at the direction and control of the Georgia Corporation does not render Plaintiffs employees under the FLSA.**

This case should be dismissed because of Plaintiffs' fundamental mistake in assuming that Beneficiaries are employees simply because they perform work therapy at the direction and control of the Georgia Corporation. *See, e.g.*, FAC ¶¶ 2, 6, 19-22. This assumption runs counter to controlling precedent by the Supreme Court and the Eleventh Circuit requiring courts to "focus[] on the economic reality of the situation in its entirety" and recognizing various situations in which the mere performance of activities that might be described as work does not create an employment relationship. *See, e.g., Villarreal v. Woodham,* 113 F.3d 202, 207 (11th Cir. 1997). Plaintiffs' claims must be dismissed because they have failed to "allege facts, which taken as true, establish that they were employees . . . ." *Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 290 (7th Cir. 2016); *see also*

*Freeman v. Key Largo Volunteer Fire & Rescue Dep't., Inc.*, 494 F. App'x. 940, 942-44 (11th Cir. 2012).

The FLSA defines an "employee" as "any individual employed by an employer" and an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203(d), (e)(1). The Act defines "employ" as to "suffer or permit to work." 29 U.S.C. § 203(g). Perhaps because these definitions are almost universally considered "circular" and "unhelpful," courts have long had to determine whether particular circumstances constitute an employment relationship. *See, e.g.*, *Schumann v. Collier Anesthesia, P.A.,* 803 F.3d 1199, 1207 n.6 (11th Cir. 2015) (collecting cases). Courts consistently hold that although the FLSA was intended to be broadly interpreted, its application is not unlimited. *See Portland Terminal*, 330 U.S. 148. Rather, the FLSA was enacted to protect workers who operate within the *"*traditional free-market employment" paradigm. *Villarreal*, 113 F.3d at 207. *See also Danneskjold v. Hausrath*, 82 F.3d 37, 42 (2d Cir. 1996) (incarcerated plaintiff "was not an employee in any conventional sense"); *Steelman v. Hirsch,* 473 F.3d 124, 129 (4th Cir. 2007) ("However, when relationships have deviated from the traditional understanding of employment in fundamental ways, the Supreme Court has refused to shoehorn them into the Act."). In other words, not every relationship in which

one person performs activities that might be characterized as "work" at the direction and control of another is an employment relationship. Rather, "employment for FLSA purposes is a 'flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances.'" *Schumann,* 803 F.3d at 1210 n.9 (quoting *Glatt v. Fox Searchlight Pictures, Inc*., 791 F.3d 376 (2d Cir. 2015), *superseded* by 811 F.3d 528 (2d Cir. 2016) (relevant language in both decisions)).

While work therapy is one element of the Plaintiffs' relationship with the Georgia Corporation, it is not the defining one. Rather, Plaintiffs' relationship with the Georgia Corporation is defined by their participation in the rehabilitation programs, of which work therapy is just one component. Work therapy performed in the context of a rehabilitation program with the objective of providing vulnerable individuals with self-esteem and good work habits to help them reintegrate into society does not reflect the traditional employment relationship contemplated by Congress when it enacted the FLSA. *See Villarreal,* 113 F.3d at 207 (holding that pre-trial detainees are not employees because the "situation does not bear any indicia of traditional free-market employment contemplated under the FLSA"). While Plaintiffs performed work therapy "at the direction and control" of the Georgia Corporation, this fact is largely irrelevant to the analysis because the

FLSA simply was not intended to cover work therapy performed for the purpose of rehabilitation.  *See Strickland*, 87 F.3d 1064; *see also Vaughn II*, 957 F.3d 141, 145 (2d Cir. 2020) (dismissing FLSA action because work therapy participants were the "primary beneficiary" of their relationship with the rehabilitation center).

Consistent with this understanding, courts have held that no employment relationship existed in numerous other contexts in which a person or entity directed or controlled the "work" of another, but where the relationship did not manifest the bargained-for exchange of labor that defines employment under the FLSA.  In particular, courts have reached this conclusion where, as here, the individual engaged in the work for his or her own benefit, such as work performed as a requirement of living in a homeless shelter,[2] internships and work performed by student trainees,[3] work performed as an alternative to incarceration,[4] and work

---

[2] *Armento v. Asheville Buncombe Cmty.*, *Christian Ministry, Inc.*, 856 F. App'x. 445 (4th Cir. 2021).

[3] *See, e.g.*, *Schumann*, 803 F.3d 1199; *Jones v. IndustryPro.com, Inc.*, 2021 WL 2593768 (N.D. Ga. Mar. 2, 2021); *Glatt*, 811 F.3d 528; *Velarde v. GW GJ, Inc.*, 914 F.3d 779 (2d Cir. 2019); *Solis v. Laurelbrook Sanitarium & Sch., Inc.*, 642 F.3d 518 (6th Cir. 2011).

[4] *Doyle v. City of N.Y.*, 91 F. Supp. 3d 480 (S.D.N.Y. 2015); *Vaughn II*, 957 F.3d 141.

performed as an alternative to military service.[5]  Courts have reached similar

outcomes in cases involving prison labor,[6] work performed in pretrial and civil

detention situations,[7] volunteer work,[8] and work performed by romantic partners

sharing in a business.[9]  Such situations simply do not resemble a conventional

employment relationship, where there is a "bargained-for exchange of labor".

*Villarreal,* 113 F.3d at 207.  And while there is no explicit statutory exception for

individuals in a residential rehabilitation program, as with some of the other types

of relationships listed above, that is likely because "the idea was too outlandish to

occur to anyone when the legislation was under consideration by Congress."

*Bennett v. Frank*, 395 F.3d 409, 410 (7th Cir. 2005).

---

[5] *Isaacson v. Penn. Cmty. Servs.,* 450 F.2d 1306 (4th Cir. 1971).

[6] *See, e.g.*, *Danneskjold*, 82 F.3d 37; *Vanskike v. Peters*, 974 F.2d 806 (7th Cir. 1992); *Harker v. State Use Indus.*, 990 F.2d 131 (4th Cir. 1993).

[7] *Villarreal,* 113 F.3d 202; *Guevara v. I.N.S.*, 902 F.2d 394 (5th Cir. 1990); *Ndambi v. CoreCivic*, *Inc.*, 990 F.3d 369 (4th Cir. 2021).

[8] *See, e.g.*, *Freeman*, 494 F. App'x. 940 (volunteer firefighters); *Acosta v. Cathedral Buffet, Inc*. 887 F.3d 761 (6th Cir. 2018) (church-owned restaurant operated with unpaid church members).

[9] *Steelman*, 473 F.3d 124 (4th Cir. 2007).

**B.** **Plaintiffs have not plausibly pled that the economic reality reflects an employment relationship between Plaintiffs and the Georgia Corporation.**

In considering whether an employment relationship exists, courts assess the

economic reality of the particular relationship.[10] The Eleventh Circuit has

"endorsed the Second Circuit's approach in treating employment for FLSA

purposes as a flexible concept to be determined on a case-by-case basis by review

of the totality of the circumstances." *Roberts v. Gwinnett Cnty.*, 225 F. Supp. 3d

---

[10] The question of whether Plaintiffs have plausibly pleaded that they are "employees" in a status case like this, where plaintiffs bear the burden of proof, differs from the "economic realities" test ("IC test") traditionally applied to determine whether an individual should be classified as an independent contractor or an employee. *See, e.g.*, *Villarreal,* 113 F.3d at 206 (rejecting four-factor IC test focusing on employer's control and instead adopting approach set forth in the Seventh Circuit focusing "on the economic reality of the situation as a whole."); *Roberts v. Gwinnett Cnty., Ga*., 225 F. Supp. 3d 1400, 1413 (N.D. Ga. 2016) ("[T]he difficulty with applying the [IC test factors] is that they largely arise from cases involving alleged independent contractors") (internal quotations omitted); *Vanskike*, 974 F.2d at 808-9 (declining to apply 4-factor IC test emphasizing control over the terms and structure of the relationship, noting that such test "harkens back to the common law distinction between an employer and an independent contractor" As discussed *supra*, Plaintiffs' repeated assertions that they performed work therapy "under the direction and control" of Defendant (*see, e.g.*, FAC ¶¶ 2, 6, 19-22) appear to reflect this confusion, as an alleged employer's control over the work performed is a factor in the IC test, but is inapposite as to the employee status of the person performing the work. *See Villarreal,* 113 F.3d at 205 (listing IC test from *Bonnette v. California,* including "(1) whether the alleged employer had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.").

1400, 1412 (N.D. Ga. 2016) (referring to *Schumann*, 803 F.3d at 1210 n.9, 1211-12) (internal quotations omitted).  Federal courts "have repeatedly recognized that there is no one-size-fits-all approach to analyzing employment status under the Act."  *Roberts*, 225 F. Supp. 3d at 1412.

In *Portland Terminal*, the Supreme Court recognized an important limiting principle of the FLSA:  An employment relationship is not established where an individual lacks any expectation of compensation, and where the individual performs work for his/her own benefit.  *See id*. *at* 151.  "[S]uch a construction would sweep under the Act each person who, without promise or expectation of compensation, but solely for his personal purpose or pleasure, worked in activities carried on by other persons either for their pleasure or profit."  *Id.* at 152.  There, the court held that a railroad company's required practical training course, for which the company provided no compensation, did not constitute employment, despite the fact that the trainees did "work in the kind of activities covered by the Act."  *Id.* at 150.

As described below, Plaintiffs have not plausibly alleged that they had any expectation of compensation, nor have they plausibly alleged that the Georgia Corporation is the primary beneficiary of their relationship.  Their failure to do so

is fatal to their theory that participation in a spiritually-based residential

rehabilitation program constitutes an employment relationship.

> 1.   Plaintiffs cannot plausibly allege that they had any expectation of compensation.

As the Ninth Circuit observed in *Williams v. Strickland*, "[t]he facts place

this case within the holding of *Walling*[.]"  87 F.3d at 1067.  Specifically, the Ninth

Circuit held that Williams, an ARC Beneficiary, had "neither an express nor an

implied agreement for compensation with The Salvation Army, and thus was not

an employee." *Id.*  The court looked in particular to the plaintiff's admittance

statement, which is required to be signed by all Beneficiaries prior to entering an

ARC program.  The statement specified: "I further understand that under no

circumstances can this Center be under any obligation to me; and that I am a

beneficiary and not an employee of this Center." *Strickland*, 87 F.3d at 1067.

The Ninth Circuit distinguished *Tony and Susan Alamo Foundation v.*

*Secretary of Labor,* 471 U.S. 290, 291 (1985), where the Supreme Court held that

"associates" who worked at a residential facility had an expectation of

compensation in the form of in-kind benefits.  As the Ninth Circuit noted, unlike

the associates in *Alamo*, Williams' relationship with The Salvation Army was

"solely rehabilitative," and his "work therapy was not performed in exchange for

in-kind benefits, but rather was performed to give him a sense of self-worth,

accomplishment, and enabled him to overcome his drinking problems and reenter the economic marketplace." *Strickland*, 87 F.3d at 1067. The court further emphasized that the fact that The Salvation Army requires Beneficiaries to "offset the cost of [their] room, board, and clothing . . . strongly counsels against a holding that Williams received the in-kind benefits in exchange for his work." *Id.* (referring to the requirement that Beneficiaries turn over certain government-provided benefits to The Salvation Army)*; see* FAC ¶¶ 3, 45. Finally, the Ninth Circuit noted that while Williams's stay of six months at the rehabilitation center was longer than the one-week trainee program in *Portland Terminal*, "the beneficiaries have significantly different needs from those of the railroad trainees and six months is not an unreasonable time commitment to treat these needs." *Strickland*, 87 F.3d at 1068.

Both the Ninth Circuit's analysis and holding in *Strickland* remain correct. Beneficiaries do not enroll in the ARC programs in order to earn a living, nor do they have any expectation of compensation upon enrollment. The beneficiary admittance forms, quoted in *Strickland*, are clear – Beneficiaries do not expect compensation, but rather, enroll voluntarily for the assistance provided by the Georgia Corporation, which includes spiritual counseling, religious worship and

Bible study, food, housing, *and* work therapy.  These are all elements of a holistic

rehabilitation program, not a *quid pro quo.*

Plaintiffs' threadbare allegations that they had an expectation of

compensation (FAC ¶¶ 6, 42[11]) are nothing more than a "formulaic recitation" of

the elements required to find coverage under the Act and do not give rise to a

reasonable inference of plausibility.  *Twombly*, 550 U.S. at 545.  Here, Plaintiffs

provide absolutely no factual detail to support their conclusory allegations, thereby

failing to "nudge [their] claims across the line from conceivable to plausible."

*Twombly*, 550 U.S. at 570.  For example, Plaintiffs do not allege that they were

told their participation in the rehabilitation programs would be compensated.  Nor

do they allege any other explanation for why they would have such an expectation.

And their contrary conclusory allegations are belied by the plain language of the

beneficiary admittance statement that is required to be signed by each Beneficiary

in the intake process.  *Strickland*, 87 F.3d at 1065.  Plaintiffs' naked contrary

---

[11] *See, e.g.*, FAC ¶ 6 ("Because ARC workers are suffered or permitted to perform
tasks for Defendant's benefit, under the direction and control of Defendant's
employees, and *with the expectation of receiving compensation* from Defendant for
their labor, Plaintiffs and all others similarly situated are Defendant's employees
under the FLSA[.]") (emphasis added); FAC ¶ 42 ("Notwithstanding the
significant benefits Defendant derives from the jobs performed by ARC workers,
and the ARC workers' expectation that they will be compensated for their labor . . .
.").

assertions are thus insufficient to satisfy their burden to plausibly allege that they had an expectation of compensation with regard to their participation in the ARC programs. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

      2.    <u>Plaintiffs fail to plausibly allege that the Georgia Corporation is the primary beneficiary of their rehabilitation relationship.</u>

Some courts pursue a broader inquiry into the economic reality of the relationship at issue, concluding from *Portland Terminal* that the "proper question" is whether the worker or the employer is the "primary beneficiary of the relationship." *Vaughn II*, 957 F.3d 141, 145 (2d Cir. 2020). Plaintiffs are not employees under this test, because they are the primary beneficiaries of the ARC programs operated by the Georgia Corporation.

The Eleventh Circuit has not yet had reason to determine whether the economic reality of work therapy performed by a participant in a rehabilitation program reflects an employment relationship. The Second Circuit, however, recently considered this question in *Vaughn II*, where it dismissed the plaintiff's claims on the basis of the primary beneficiary test set forth in *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d at 531, a test which the Eleventh Circuit has previously adopted and applied. *See Schumann*, 803 F.3d at 1211-12; *see also McKay v. Miami-Dade Cnty.,* 36 F.4th 1128, 1135-36 (11th Cir. 2022). This test, originally used to determine whether an intern constituted an employee under the

FLSA, requires a court to evaluate a "non-exhaustive set of considerations," while maintaining the "'flexibility to [permit] examin[ation] of the economic reality' of the relationship[.]" *Vaughn II*, 957 F.3d at 145 (quoting *Glatt*, 811 F.3d at 536) (alteration in original).

*Vaughn* is instructive here, both because of its factual similarities[12] and in its thorough and flexible application of the factors. *Vaughn v. Phoenix House Found., Inc.,* 2019 WL 568012, at *5 (S.D.N.Y. Feb. 12, 2019) ("*Vaughn I*") (noting that a "stringent application of the *Glatt* factors to this case would 'cause [the] [C]ourt to miss the forest for the trees'") (quoting *Doyle v. City of N.Y.,* 91 F. Supp. 3d 480, 486 (S.D.N.Y. 2015)) (alteration in original). Furthermore, *Vaughn* did not limit itself to the seven *Glatt* factors or the IC test, but also considered the "significant benefits" that the plaintiff received from his rehabilitation program, which included "'food, a place to live, therapy, vocational training, and jobs that kept him busy and off drugs.'" *Vaughn II*, 957 F.3d. at 146.

---

[12] Vaughn was allegedly required to perform work therapy in eight-hour shifts, six days per week as part of a court-mandated rehabilitation program. *Vaughn v. Phoenix House Found., Inc*., 2019 WL 568012, at *1 (S.D.N.Y. Feb. 12, 2019), *aff'd sub nom. Vaughn v. Phoenix House N.Y. Inc*., 957 F.3d 141 (*Vaughn II*). He performed "unpaid, menial work" at the Phoenix House facilities and a related warehouse. *Vaughn*, 2019 WL 568012, at *1. He remained in the program for over two years, most of which was spent in the in-patient program. *Id*.

As the Second Circuit found in *Vaughn II*, (1) the Plaintiffs' lack of any expectation of compensation;[13] (2) the extent to which the duration of the programs are limited to the period in which Plaintiffs are engaged in "beneficial learning" or rehabilitative activity;[14] and (3) the mutual understanding that the programs are conducted without entitlement to a paid job, all weigh strongly against finding that Plaintiffs are employees. *Id.* at 145-46. In *Vaughn II,* the Second Circuit found only one factor weighed in favor of finding an employment relationship: the extent to which the work complements, as opposed to displaces, the work of paid employees. The court noted, however, that this factor should be given less weight in the context of a facility that operates for rehabilitative purposes. *Id*. at 146. This distinction applies here as well. The thrift stores where some Beneficiaries perform work therapy are not for-profit commercial ventures, but rather are operated in conjunction with, and with the purpose of funding, the Georgia Corporation's ARC programs.[15] The remaining factors of the *Glatt* test, which the

---

[13] In its analysis of this factor, the district court cited with approval the Ninth Circuit's decision in *Strickland. Vaughn I*, 2019 WL 568012, at *5.

[14] As Plaintiffs acknowledge, Beneficiaries typically remain in the programs until they "graduate," *i.e.,* only for the duration of their rehabilitation needs. FAC ¶ 46.

[15] The structure and operation of the Georgia Corporation's work therapy programs are entirely different from other purported "rehabilitation programs" that require participants to work in order to pay off their program fees or otherwise farm beneficiaries out to commercial ventures in order to collect program fees. *See,*

Second Circuit found to provide "mixed guidance," focus on whether the work is tied to the educational purpose of the internship. *Vaughn II*, 957 F.3d at 146. These factors are not directly relevant outside of the internship context.

Additionally, Plaintiffs' allegations that the work therapy performed by Plaintiffs "directly, substantially, and primarily benefit" the Georgia Corporation (FAC ¶ 33) are not plausible because they fail to address the very reason for which Plaintiffs choose to enroll in the programs and engage in work therapy, *i.e.* for their own rehabilitation. Moreover, even assuming, *arguendo*, that the Georgia Corporation derived some benefit, financial or otherwise, this fact would not render Plaintiffs' claims plausible or change the outcome of the primary beneficiary test. *See, e.g.*, *Schumann*, 803 F.3d at 1211 (noting that the "mere fact" that an alleged employer obtains benefits from an internship program "cannot, standing alone, render the student interns 'employees' for purposes of the FLSA.").

Given these personal benefits and the overall purpose and effect of work therapy as part of a rehabilitative program, Plaintiffs unquestionably "work for their own advantage on the premises of another." *Portland Terminal*, 330 U.S. at 152. Plaintiffs make no contrary plausible allegations. Accordingly, as the

*e.g.*, *Walker v. Freedom Rain, Inc*., 2017 WL 897592, at *2 (N.D. Ala. Mar. 7, 2017). Rather, as the Ninth Circuit found, Beneficiaries work for "solely rehabilitative" purposes. *Strickland*, 87 F.3d at 1067.

primary beneficiaries of their relationship with the Georgia Corporation, Plaintiffs

cannot be deemed to be employees under the FLSA.

## II.     The First Amended Complaint Cannot Plausibly Allege Employee Status Under Florida Law Because the Standard for Employee Parallels the FLSA.

Plaintiffs' allegations under the state laws fail because the Florida Minimum

Wage Act mirrors the FLSA in its standard for defining an "employee."  Section

448.110 states: "Only those individuals entitled to receive the federal minimum

wage under the federal Fair Labor Standards Act and its implementing regulations

shall be eligible to receive the state minimum wage. . . ."  Florida Minimum Wage

Act, Fla. Stat. § 448.110(3) (2012).  *See also Anagnos v. Nelsen Residence, Inc*.,

721 F. App'x 901, 903-04 (11th Cir. 2018) (holding that the Wage Amendment of

the Florida Constitution, like the Florida Minimum Wage Act, applies only to

individuals covered by the FLSA).  Because Plaintiffs cannot plausibly plead that

they are employees of the Georgia Corporation, Count Three of the Amended

Complaint should be dismissed.

## III.    The First Amended Complaint Also Fails to State a Claim that the Georgia Corporation Willfully Violated the FLSA.

Even if this Court were to determine that Plaintiffs have plausibly alleged

that they are employees under the FLSA, it should find that the FAC does not state

a plausible claim that such a violation is *willful* under the statute.  "Where 'an

employer acts unreasonably but not recklessly in determining its legal obligation under the FLSA,'" the Eleventh Circuit "do[es] not consider its acts willful." *Kaplan v. Code Blue Billing & Coding, Inc*., 504 F. App'x 831, 833 (11th Cir. 2013). Where plaintiffs have "done nothing more than include various forms of the word "willful" in its allegations[,]" courts in the Eleventh Circuit have found "[s]uch conclusory allegations [] insufficient to satisfy plaintiff's burden to plead willfulness." *See, e.g.*, *Bautista v. El Coyote Mex Rest., Inc*., 2014 WL 2465327, at *3 (N.D. Ala. May 30, 2014).

Here, Plaintiffs plead *no* facts to support their allegation that the Georgia Corporation "willfully and intentionally failed to properly compensate" Plaintiffs under the FLSA. FAC ¶ 53. Nor could they. As discussed *supra*, the Georgia Corporation had ample reason to believe that Beneficiaries were not employees because (1) they had no expectation of compensation, and (2) they were the primary beneficiaries of the relationship. This belief was particularly reasonable given the Ninth Circuit's decision in *Strickland* – the only Court of Appeals decision to have considered an ARC program – and other persuasive legal authority on which the Georgia Corporation has relied for decades.

Because Plaintiffs fail to plausibly plead willfulness, the statute of limitations for Plaintiffs' FLSA claims is limited to two years.

**CONCLUSION**

For all of these reasons, the Georgia Corporation respectfully requests that the Court dismiss the First Amended Complaint.

Date: July 27, 2022

Respectfully submitted,

*/s/ Evan R. Mermelstein*
Evan R. Mermelstein
Georgia Bar No. 502567
Law Offices of Evan R. Mermelstein, LLC
5665 Atlanta Highway, Suite 103-302
Alpharetta, GA 30004
evan@mermelsteinlaw.com

*/s/ Thomas P. Gies*
Thomas P. Gies
Sadina Montani
Andrew W. Bagley
Katie R. Aber
Rachel S. Lesser
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 624-2500
TGies@crowell.com
SMontani@crowell.com
ABagley@crowell.com
KAber@crowell.com
RLesser@crowell.com

*Attorneys for The Salvation Army, a Georgia corporation*

## <u>CERTIFICATION OF FONT SIZE</u>

The undersigned hereby certifies that the foregoing DEFENDANT'S

MOTION TO DISMISS and MEMORANDUM OF LAW IN SUPPORT OF THE

DEFENDANT'S MOTION TO DISMISS, were prepared, double-spaced, in the

following font: Times New Roman (14 point).

Date: July 27, 2022

Respectfully submitted,

*/s/ Evan R. Mermelstein*
Evan R. Mermelstein
Georgia Bar No. 502567
Law Offices of Evan R. Mermelstein, LLC
5665 Atlanta Highway, Suite 103-302
Alpharetta, GA 30004
evan@mermelsteinlaw.com

*/s/ Thomas P. Gies*
Thomas P. Gies
Sadina Montani
Andrew W. Bagley
Katie R. Aber
Rachel S. Lesser
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004
(202) 624-2500
TGies@crowell.com
SMontani@crowell.com
ABagley@crowell.com
KAber@crowell.com
RLesser@crowell.com

*Attorneys for The Salvation Army, a Georgia corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2022, true and correct copies of the documents listed below were served on all counsel of record via the Court's CM/ECF system:

1. The Defendant's Motion to Dismiss;

2. Memorandum of Law in Support of Defendant's Motion to Dismiss;

Date: July 27, 2022

Respectfully submitted,

*/s/ Evan R. Mermelstein*
Evan R. Mermelstein
Georgia Bar No. 502567
Law Offices of Evan R. Mermelstein, LLC
5665 Atlanta Highway, Suite 103-302
Alpharetta, GA 30004
evan@mermelsteinlaw.com

*/s/ Thomas P. Gies*
Thomas P. Gies
Sadina Montani
Andrew W. Bagley
Katie R. Aber
Rachel S. Lesser
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 624-2500
TGies@crowell.com
SMontani@crowell.com
ABagley@crowell.com
KAber@crowell.com
RLesser@crowell.com

*Attorneys for The Salvation Army, a
Georgia corporation*